United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 96-3249

Heart of America Grain Inspection   *
Service, Inc.; Thomas J. Clatanoff;   *
Jack L. Covey; Stephen E. Plummer;   *
Monty M. Uptegrove,   *
  *
    Plaintiffs,   *
  *
   v.   *
  *
Missouri Department of Agriculture;   *   Appeals from the United States
Stephen Bell; Tommy D. Hopkins,   *   District Court for the Western
  *   District of Missouri.
    Defendants.   *
--------------------------   *
State of Missouri, ex rel John L.   *
Saunders, Director, Missouri   *
Department of Agriculture,   *
  *
    Plaintiff - Appellant,   *
  *
   v.   *
  *
Heart of America Grain Inspection   *
Service, Inc.; Thomas J. Clatanoff;   *
Stephen E. Plummer; Jack L. Covey;   *
Monty M. Uptegrove,   *
  *
    Defendants - Appellees.   *

_____

No. 96-3263

_____

| | |
|---|---|
| Heart of America Grain Inspection Service, Inc.; Thomas J. Clatanoff; Jack L. Covey; Stephen E. Plummer; Monty M. Uptegrove, | * * * * |
| | * |
| Plaintiffs - Appellants, | * |
| | * |
| v. | * |
| | * |
| Missouri Department of Agriculture; Stephen Bell; Tommy D. Hopkins, | * * |
| | * |
| Defendants - Appellees. | * |
| -------------------------- | * |
| State of Missouri, ex rel John L. Saunders, Director, Missouri Department of Agriculture, | * * * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Heart of America Grain Inspection Service, Inc.; Thomas J. Clatanoff; Stephen E. Plummer; Jack L. Covey; Monty M. Uptegrove, | * * * * |
| | * |
| Defendants - Appellants. | * |

Submitted: June 9, 1997
Filed: August 26, 1997

_____

Before BOWMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
KYLE,[1] District Judge.

_____

BOWMAN, Circuit Judge.

The Missouri Department of Agriculture, ex rel John L. Saunders, Director, Missouri Department of Agriculture (the Department); Stephen Bell; and Tommy D. Hopkins appeal from an order of the District Court[2] granting summary judgment to Heart of America Grain Inspection Service Inc., Thomas J. Clatanoff, Jack L. Covey, Stephen E. Plummer, and Monty M. Uptegrove (collectively, HOA) on HOA's counterclaim for declaratory and injunctive relief, and denying summary judgment to the Department on its own claim for declaratory and injunctive relief. HOA cross appeals from a number of decisions adverse to it. We affirm.

I.

In 1992, HOA (some of whose employees were employed by the Department before joining HOA) was performing grain weighing, grading, and inspection services in grain warehouses in the Kansas City area that were licensed under the United States Warehouse Act, 7 U.S.C. §§ 241-73 (1994) (the USWA or the Act). Among other services, HOA provided Class II certified weights. Such weights are a grain industry

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

standard (not a matter of federal or state law) and are obtained by a licensed weigher, using an approved scale, under twenty-five per cent supervision by a disinterested third party. HOA and the Department both offered Class II certification services in 1992, that is, they provided the supervisory, disinterested third party. HOA provided this service under authority of the Association of American Railroads, a trade group, and in October 1992 individuals working for HOA received federal licenses under the USWA (after the Department notified the United States Department of Agriculture (USDA) of HOA's grain certification activities).

In September 1992, the Department sent a letter to the grain industry over the signatures of Hopkins, who was then (and was from November 1981 through June 1994) the Division Director of Grain Inspection and Warehousing for the Department, and Mark Weaver, an assistant state attorney general. The letter related the Department's position that it had the exclusive right (subject to the rights of grain exchanges and boards of trade) to weigh and supervise the weighing of grain in all warehouses in the state of Missouri. The Department relied for its authority on the Missouri Grain Warehouse Law (the MGWL):

> The department shall have the exclusive right to officially weigh or supervise the actual weighing of grain in licensed terminal warehouses subject to the provisions of this chapter, unless the owner or his agent indicates that no official weights are desired and may officially weigh or supervise the actual weighing of grain in public or private warehouses or industries upon application of the owners or operators thereof and their agreement to guarantee the operating costs.

Mo. Rev. Stat. § 411.030.2 (1986). In the Department's view, or so it now claims, this statute gave the Department the sole right (with the exceptions we have noted above) to certify Class II grain weights. The Department took this position, even as to warehouses licensed under the USWA, notwithstanding two other sections of the MGWL. The first, concerning the scope of the MGWL, stated, "The provisions of the

[MGWL] shall apply to all warehouses located within the state of Missouri not licensed under the provisions of the [USWA]." Id. § 411.015 (1986). The other relevant section provided:

> This chapter shall not apply in any respect whatsoever to that part of any operation of any public or private warehouse, elevator, or structure in this state operating under a federal warehouse act, except as such warehouseman may make application for any of the services of the Missouri grain warehouse department, nor shall this chapter prohibit, infringe, or apply to any weighing or weighing supervision in or in connection with a federally licensed warehouse performed by any grain exchange or board of trade.

Id. § 411.681 (1986).

In 1993, the Department found it necessary to revise its regulations to reflect its position on the certification of grain weights. Also, during the 1993 Missouri legislative session, sections 411.015 and 411.681 were revised to eliminate the portions of those sections that prohibited state regulation of federally licensed warehouses.[3]

On August 2, 1993, HOA filed a complaint in the District Court seeking a declaratory judgment and injunctive relief against the Department (Count I), and challenging certain actions taken by Hopkins and Bell as tortious interference with HOA's business relationships (Count II) and as violations of HOA's rights under 42 U.S.C. § 1983 (1994) (Count III). The Department then filed suit in Missouri state

---

[3]The "Scope of law" section now reads, "The provisions of the [MGWL] shall apply to all warehouses located within the state of Missouri." Mo. Rev. Stat. § 411.015 (1994). Section 411.681 of the 1994 Missouri Revised Statutes now states, "This chapter shall not prohibit, infringe, or apply to any weighing or weighing supervision in or in connection with a federally licensed warehouse performed by any grain exchange or board of trade."

court seeking an injunction against HOA, which responded with a counterclaim in three counts, essentially reproducing its federal claims. The Department's suit was removed to federal court and consolidated with HOA's suit.

On July 21, 1994, the Department as a state agency was dismissed from HOA's suit on Eleventh Amendment grounds. On January 25, 1995, HOA's claim against Hopkins for declaratory and injunctive relief (Count I) was dismissed because he was no longer an employee of the Department. The District Court also granted summary judgment to Hopkins on HOA's Count II, tortious interference with business relationships, concluding that Hopkins was entitled to official immunity because sending the September 1992 letter was a discretionary act. In January 1996, the court granted Hopkins summary judgment on HOA's § 1983 claim (Count III), concluding that he was entitled to qualified immunity. Finally, on July 3, 1996, Bell, who was responsible for administering the Department's grain inspection program when HOA's claims were made, was granted summary judgment on all three counts: on Count I because he had no policy-making authority at the time the summary judgment was granted, on Count II because of privilege, and on Count III because of qualified immunity. The court granted summary judgment to HOA, however, on Count I of its counterclaim against the Department ex rel Saunders for declaratory and injunctive relief, having determined that the state law at issue was preempted by federal law.

The Department appeals, challenging the standing of the HOA individual plaintiffs to bring suit and the District Court's decision on preemption. HOA cross appeals, challenging all of the court's decisions adverse to HOA (except for the Eleventh Amendment dismissal of the Department and the dismissal of Count I as to Hopkins and Bell), and further claiming that the court erred in denying HOA's motion to compel discovery of certain Department files. We affirm.

II.

The Department argues that the individual HOA plaintiffs are without standing to sue, and that the District Court erred by not dismissing them.  According to the Department, the claims of the individual plaintiffs are merely derivative of the corporations's claims.  We reject this argument.

It is true that the judiciary has created a prudential standing requirement "that a litigant must normally assert his own legal interests rather than those of third parties." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 804 (1985).  We believe, however, that the HOA individual plaintiffs are not third parties without standing merely because they are asserting claims along with HOA, their corporation.  "[A] shareholder with a direct, personal interest in a cause of action [may] bring suit even if the corporation's rights are also implicated."  Franchise Tax Bd. v. Alcan Aluminium Ltd., 493 U.S. 331, 336 (1990).  The HOA individual plaintiffs have such direct and personal interests, as they are among those who personally are prevented from practicing their trade by virtue of the state's actions--as they would be regardless of their affiliation with HOA.  Moreover, each is licensed under the USWA, which is the basis for the District Court's preemption decision; HOA, the corporation, does not itself hold a federal license but it does wish to do business with federally-licensed warehouses.  Thus both the individuals and the corporation are in a position to assert distinct claims charging violations of their rights.[4]

---

[4]The Department's reliance on Lovett v. General Motors Corp., 975 F.2d 518, 521 (8th Cir. 1992), for its proposition that the HOA individuals have no standing because their claims are derivative of the corporation's claims is misplaced.  The individual plaintiff in Lovett was seeking standing under federal antitrust law for injuries suffered by his bankrupted business.  This Court concluded that the individual plaintiff's damages were "incidental to the alleged antitrust activity and not the type of loss Congress intended to prevent with the antitrust laws."  Id.  Lovett is limited by its facts and by the federal antitrust statutes upon which the jurisdiction of the federal court

But even if we were mistaken about the standing of the individual HOA plaintiffs, our error would be of no consequence to our conclusion that the federal courts have jurisdiction, because of our affirmance of the District Court on appeal. The Department does not claim that HOA, the corporation, lacks standing to seek declaratory and injunctive relief against the Department, and that is the only relief to which HOA is entitled in this case. Further, although the Department thinks otherwise, we believe it is of significance that the relief granted HOA was actually granted on Count I of its counterclaim filed in answer to the Department's suit--which the Department brought against HOA, the corporation, and the same four individuals named as plaintiffs in HOA's suit, and which sought, among other things, declaratory and injunctive relief against all of the plaintiffs.

## III.

The Department also claims that the District Court erred in concluding that the Department's stance on third-party supervision of grain weighing and certification of grain weights is preempted by the USWA. We disagree.

Under the Supremacy Clause, U.S. Const. art. VI, cl. 2, the United States Constitution and federal laws and treaties are "the supreme Law of the Land." Thus Congress, by passing certain legislation, may act to preempt state law. "In the interest of avoiding unintended encroachment on the authority of the States, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption." CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 663-64 (1993). Grain warehousing is such an area of traditional state concern, and when the USWA was enacted in 1916, Congress specifically "made federal regulation in this field subservient to state regulation." Rice v. Santa Fe Elevator Corp., 331 U.S.

---

was invoked. That is, it was the statute that limited standing to businesses, not any prudential considerations of the court.

-8-

218, 222 (1947). But the Act was amended in 1931 and now provides that, although the Secretary of Agriculture has authority to cooperate with states in the enforcement of state warehouse laws, "the power, jurisdiction, and authority conferred upon the Secretary of Agriculture under this chapter shall be exclusive with respect to all persons securing a license hereunder so long as said license remains in effect." 7 U.S.C. § 269 (1994). We think that this amendment portended preemption of the state law here in question.

There are several methods by which courts may discern that Congress intends to preempt state law when it enacts certain federal legislation. First, a federal law may expressly preempt a state law. See Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 604-05 (1991). Next, preemption will occur of necessity if a state law and a federal law are in direct conflict. When "'compliance with both federal and state regulations is a physical impossibility' or when a state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" then the state law is preempted. Id. at 605 (quoting Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43 (1963), and Hines v. Davidowitz, 312 U.S. 52, 67 (1941)) (citations omitted). Also, congressional intent to preempt may be inferred from enactment of federal laws that are "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." Rice, 331 U.S. at 230. In addition, preemption will be presumed if the subject matter of the legislation concerns "a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or if the objective of the federal law or the duties it imposes "reveal the same purpose." Id.

In Rice, the Court determined that "the special and peculiar history" of the USWA as amended in 1931 precludes limiting preemption to circumstances where a state's actions "in fact dilute[] or diminish[] the federal program." Id. at 232. That is, state grain warehouse laws can be preempted even when they do not collide with a specific federal law; no direct conflict is required. After reviewing the legislative

history of the amendments, the Court concluded that the relevant 1931 changes to the USWA "say to us in plain terms that a licensee under the Federal Act can do business 'without regard to State acts.' " Id. at 234 (quoting legislative history). That is, the USWA preempts the field. Cf. Campbell v. Hussey, 368 U.S. 297, 313 (1961) (Black, J., dissenting) ("[T]he [Rice] Court . . . concluded that Congress intended to pre-empt the supplementary state regulation there involved only after demonstrating that the language of the Warehouse Act as amended, 'the special and peculiar history' of the amendment to the Act, and the underlying purpose of the Act all manifested a clear congressional purpose to pre-empt all state action in the field.") (emphasis added). The question remains whether the third-party supervision of grain weighing and certification of grain weights in federally licensed grain warehouses, here purportedly monopolized by Missouri law, is within the field preempted by federal law.

Federal grain weighing licenses were issued to the individual HOA plaintiffs and to other HOA employees pursuant to 7 U.S.C. § 252 (1994), which provides that the Secretary of Agriculture may issue a license to any competent individual "to weigh . . . and certificate the weight" of "any agricultural product or products, stored or to be stored in a warehouse licensed under" the USWA, "upon condition that such person agree to comply with and abide by the terms of this chapter and of the rules and regulations prescribed hereunder so far as the same relate to him." See also 7 C.F.R. § 736.64 (1997) (duties of inspector and weigher). We agree with the Department and the District Court that the scope of the USWA grain weighing license does not necessarily include the third-party supervision and certification function at issue here. Under the terms of the Act and its regulations, weighers can "certificate" their own grain weights and, as we noted above, Class II certified weights are the creation of the grain industry, not the USWA. Nevertheless, this finding does not preclude preemption of the state law at issue.

Within the provisions of the USWA, Congress specifically subjects certain aspects of the grain warehouse industry to state law. See Rice, 331 U.S. at 234 n.12;

-10-

7 U.S.C. §§ 260, 261 (1994). Grain weighing and supervision are not among those aspects, and every indication from a careful reading of the Act is that the regulation of grain weighing in federally licensed warehouses is explicitly reserved to the federal government. See 7 U.S.C. § 269 ("[T]he power, jurisdiction, and authority conferred upon the Secretary of Agriculture under this chapter shall be exclusive with respect to all persons securing a license hereunder so long as said license remains in effect."). Grain weighing in federally licensed warehouses by persons holding USWA licenses clearly is a matter regulated by the Act, and supervision of grain weighing and certification of grain weights are functions of grain weighing. We agree with the District Court that, "[a]lthough the grain industry is free to adopt a practice of third-party supervision, as it apparently has, the State is not thereby permitted to regulate this practice" in federally licensed warehouses. Heart of Am. Grain Inspection Serv., Inc. v. Missouri Dep't of Agric., Nos. 93-0765, 93-1158, Memorandum and Order at 15 (W.D. Mo. Jan. 22, 1996) (citation omitted).

Because Congress intended the USWA to preempt the field of grain weighing in federally licensed warehouses, and because the certification of grain weights comes within the field of grain weighing, any regulation of grain certification that a state attempts must be held to be preempted by the federal law. See Rice, 331 U.S. at 236 ("The test, therefore, is whether the matter on which the State asserts the right to act is in any way regulated by the Federal Act.") (emphasis added). Federally licensed grain warehouses and federally licensed grain weighers need only comply with the terms of the USWA when any aspect of grain weighing is implicated. Missouri's attempt not only to regulate the certification of grain weights in federally licensed warehouses, but to usurp that function entirely, is an unconstitutional exercise of state power, notwithstanding that the USWA does not explicitly regulate Class II certified weights or the persons who provide them. Cf. Campbell, 368 U.S. at 302 ("We have then a case where the federal law excludes local regulation, even though the latter does no more than supplement the former.").

-11-

The Department also suggests that the District Court should "have deferred its decision [on preemption] until it had received evidence on the implementing agency's interpretation of the statute." Department's Brief at 18. The court did have before it two letters from the United States Department of Agriculture (USDA), but the Missouri Department of Agriculture in its brief criticizes that correspondence because the court described it as "'informally' presented" and "'conclusory.'" Id. at 19. The Department argues that it should be given the opportunity to present evidence from the USDA that "will confirm that the USWA had never been interpreted by them to include, even peripherally, the third-party supervision of grain weighing." Id. Assuming for the moment that the Department is correct in its own conclusory statement, and that in fact it would be able to extract from someone at the USDA a statement of the nature asserted, we think there was ample time during the long course of this litigation for it to have done so before now. The Department will not now be heard to complain that it filed its motions for summary judgment with what it considers, in hindsight, an incomplete record.

Moreover, no one here is challenging the USDA's interpretation of a statute that the agency is charged to administer. It is not a USDA regulation that is under fire here; it is the Missouri Department of Agriculture's enforcement of state law in the face of federal legislation on the same subject. To the extent the two statements from the USDA that are already in the record are so contrary to one another as to create an issue of fact (that is, whether or not the USDA thinks the USWA preempts the Missouri law at issue here), it is not a material issue of fact because the USDA's opinion would not be dispositive of the legal question before us--whether federal law preempts state law, which is a question of congressional intent, not the regulating agency's intent.

IV.

We come now to HOA's cross appeal of the District Court's decisions regarding its Count II, the state law claim for tortious interference with business relationships.

-12-

HOA challenged Hopkins's action in sending to the grain industry the September 1992 letter declaring that only Department employees could certify weights, and Bell's statements to individuals within the grain industry that HOA was in violation of state law and that HOA was unable, for financial reasons, to provide the services it was offering to the grain industry.

As to Hopkins, the District Court concluded that he had acted within the scope of his official duties in sending the letter and that, because it was a discretionary act, he was entitled to official immunity. The court therefore granted him summary judgment. We have reviewed de novo and conclude that HOA has demonstrated no genuine issue of material fact on the question of whether Hopkins's sending of the letter was discretionary or ministerial, and that Hopkins thus is entitled to judgment as a matter of law. We do not consider HOA's argument that Hopkins acted in bad faith by sending the letter and therefore waived his right to claim official immunity, as this claim was not raised in the District Court. See Smith v. City of Des Moines, Iowa, 99 F.3d 1466, 1473 (8th Cir. 1996) ("We will not reverse a grant of summary judgment on the basis of an argument not presented below.").

HOA also contends that the District Court improperly granted summary judgment to Bell on the tortious interference claim against him. The court did not address the distinction between discretionary and ministerial acts in Bell's case because HOA did not make the argument that Bell's actions were ministerial. The court also found that it was unnecessary to decide the question of whether Bell acted in bad faith, a claim that HOA did raise as to Bell's actions. Instead the court concluded that, to the extent Bell's statements were unlawful, they nevertheless were privileged, because the same statements would be immune from a defamation claim. We hold that the court did not err in its application of the law, and that summary judgment was properly granted to Bell.

-13-

V.

The District Court also granted summary judgment to Hopkins and Bell on all claims HOA raised under § 1983 in Count III of its complaint and counterclaim. The Court decided that both men were entitled to qualified immunity.

We first consider HOA's § 1983 claim against Hopkins and Bell based on their alleged violations of HOA's rights under the Contract Clause. The District Court determined that HOA did not properly raise a claim under the Contract Clause. HOA asserts that its presentation to the court of materials "relevant to determining whether the letter affected a property interest of HOA" properly raised the claim, that "[i]t does not appear that the District Court considered" those materials, and that this claim therefore should be remanded. HOA's Brief at 21. We have reviewed the record on this question and we are satisfied that HOA did not present a Contract Clause claim to the District Court. We turn to the claims that HOA did present to the District Court.

In its January 1996 order, the court granted summary judgment to Hopkins on HOA's § 1983 claims charging violations of its rights under procedural due process and the dormant Commerce Clause. The court concluded that Hopkins was entitled to qualified immunity, as his conduct did not violate rights he knew, or reasonably should have known, were clearly established under either procedural due process or dormant Commerce Clause jurisprudence.

HOA claims its right to procedural due process was violated because Hopkins did not meet with the HOA individual plaintiffs in person before sending the September 1992 letter to representatives of the grain industry. The District Court, assuming that HOA's interest in its business was protected by the Due Process Clause, held that the correspondence between the Department and HOA or its representatives that was exchanged before the letter was circulated was sufficient to provide any process due HOA, and therefore granted Hopkins's motion for summary judgment. We have

-14-

reviewed de novo, and agree with the District Court that HOA received protection for its interests that fully comports with any rights it may have had to procedural due process, and that Hopkins was entitled to judgment as a matter of law.

HOA also argues that it has a cause of action against Hopkins under § 1983 because Hopkins's actions violated HOA's rights under the dormant Commerce Clause. The dormant, or negative, Commerce Clause "denies the States the power unjustifiably to discriminate against or burden" interstate commerce. Oregon Waste Sys., Inc. v. Department of Envtl. Quality, 511 U.S. 93, 98 (1994); see also Fulton Corp. v. Faulkner, 116 S. Ct. 848, 853-54 (1996). The District Court concluded that the exercise of state power here in question was not discriminatory, as it affected in-state and out-of-state concerns equally. The court further found that it was unable to discern from the record whether or not the Missouri law violated the second aspect of dormant Commerce Clause jurisprudence, that is, whether the law placed an undue burden on interstate commerce that could not be justified by state interests. Still, the court granted summary judgment to Hopkins, holding that it could not "realistically find that Hopkins' actions violated HOA's clearly established rights under the Commerce Clause." Heart of Am. Grain Inspection Serv., Inc. v. Missouri Dep't of Agric., Nos. 93-0765, 93-1158, Memorandum and Order at 20 (W.D. Mo. Jan. 22, 1996). The court noted the "inherently uncertain" nature of the balancing inquiry required in the undue burden portion of dormant Commerce Clause analysis, and concluded "that qualified immunity should normally be available to officials whose actions are later judicially determined to have unduly burdened interstate commerce." Id. at 19 (citing Kassel v. Consolidated Freightways Corp., 450 U.S. 662, 670 (1981) (plurality opinion) ("The extent of permissible state regulation is not always easy to measure.")). Again, we have reviewed de novo and, although we think it is a close question, we agree that Hopkins was entitled to qualified immunity on HOA's Commerce Cause claim, and thus summary judgment was properly granted.

The District Court's decision to grant summary judgment to Bell on HOA's Count III is affirmed for the reasons articulated above concerning Hopkins.

HOA also contends in its cross appeal that it was improperly denied summary judgment on a claim for injunctive relief brought against the Department under the auspices of § 1983. Because we are affirming the court's decision to grant HOA declaratory and injunctive relief on Count I of its counterclaim, it is unnecessary for us to address this question.

The District Court's decisions on HOA's Count III are affirmed.

## VI.

Finally, HOA argues that the District Court[5] erred in denying its motion to compel production of certain Department files. We review for a "gross abuse of discretion" on the part of the District Court. Kinkead v. Southwestern Bell Tel. Co., 49 F.3d 454, 457 (8th Cir. 1995).

The Department produced certain responsive documents from its files pursuant to HOA's requests, but HOA contends that the complete contents of the files were relevant and should have been produced. The District Court noted that HOA had claimed that it knew, based on certain deposition testimony, that the Department had withheld responsive documents. According to the District Court, however, HOA was unable to identify those documents (or any others) that they wanted and that the Department had failed to produce. The court reviewed the motion to compel at length and in detail, and we see no abuse of discretion, much less a "gross" abuse, in its

---

[5]The Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

decision to deny the motion to compel.  Therefore, we affirm the District Court's denial of HOA's motion to compel.

VII.

The orders of the District Court are affirmed in all respects.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT