**Richard SYMENS and Joyce Symens, Husband and Wife, Plaintiffs,**

v.

**SMITHKLINE BEECHAM CORPORATION, a Pennsylvania Corporation; Defendant.**

**Civ. No. 94–1036.**

United States District Court, D. South Dakota, Northern Division.

Oct. 7, 1997.

Order Denying Reconsideration Dec. 15, 1997.

Danny R. Smeins, Britton, South Dakota, James Allen Davis, James Allen Davis & Associates, Fremont, Nebraska, for plaintiffs.

William F. Day, Sioux Falls, South Dakota, Alan R. Peterson, Lynn, Jackson, Schultz & Lebrun, Scott A. Smith, Patrick A. Reinken, Hinshaw & Culbertson, Minneapolis, Minnesota, for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

KORNMANN, District Judge.

### BACKGROUND

[¶ 1]  Plaintiffs are engaged in the feedlot business near Claremont, Marshall County, South Dakota.  Beginning in July of 1992, and continuing until December of 1992, plaintiffs injected their cattle with the vaccine Bovishield 4 which was manufactured, tested and marketed by defendant.  Plaintiffs contend that, despite vaccination, plaintiffs' cattle and cattle belonging to others which cattle were in plaintiffs' feedlot, contracted a disease resulting in weight loss or death. Plaintiffs instituted this diversity action, claiming that defendant's Bovishield 4 vaccine is defectively designed and manufactured and unreasonably dangerous (Count I), that defendant breached implied warranties of fitness for a particular purpose and merchantability, (Counts II and III), that defendant falsely advertised and promoted the

vaccine (Counts IV and V), that defendant failed to warn of foreseeable dangers associated with the use of the vaccine (Counts VI and VII), and that defendant knowingly supplied false information to the United States Department of Agriculture ("USDA") in its applications for a license for the vaccine (Count 8). Defendants deny the material allegations of the complaint and have moved for summary judgment, Doc. 52, claiming plaintiffs' claims are all preempted by the Virus–Serum–Toxin Act (VSTA), 21 U.S.C. §§ 151–159.

## DISCUSSION

[¶ 2] Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c), *Donaho v. FMC Corp.*, 74 F.3d 894, 898 (8th Cir.1996). The issue of federal preemption is one of law for the court to decide. Defendant requested oral argument. Defendant has briefed this issue numerous times before numerous other federal and state courts and almost all of the issues have been adequately addressed by the parties and by other courts. Pursuant to D.S.D. LR 7.1, the motion will be decided without oral argument. *Jetton v. McDonnell Douglas Corp.*, 121 F.3d 423, 426–427 (8th Cir. 1997). Defendant's motion for oral argument has been considered and denied.

[¶ 3] The issue presented by defendant's motion for summary judgment has been analyzed by at least five federal and state courts. See *Lynnbrook Farms v. Smithkline Beecham Corp.*, 79 F.3d 620 (7th Cir.1996), cert. den. —— U.S. ——, 117 S.Ct. 178, 136 L.Ed.2d 118 (1996); *Garrelts v. SmithKline Beecham Corp.*, 943 F.Supp. 1023 (N.D.Iowa 1996); *Gresham v. Boehringer Ingelheim Animal Health, Inc.*, Civ. 95–3376, 1996 WL 751126 (N.D.Ga. August 7, 1996); *Murphy v. SmithKline Beecham Animal Health Group*, 898 F.Supp. 811 (D.Kan.1995); and *Brandt v. SmithKline Beecham Corp.*, 540 N.W.2d 870 (Minn.App.1995). The issue presented was best stated by Judge Bennett in *Garrelts* as "whether the regulations promulgated by the ... VSTA ... preempt plaintiffs' state tort claims, because plaintiffs' claims are alleged-

ly premised on inadequate labeling of a product whose label had been approved by the agency under its regulations." *Garrelts v. SmithKline Beecham*, 943 F.Supp. at 1028. *Garrelts* and *Gresham* decided that the VSTA did not preempt some state law claims. *Lynnbrook, Murphy,* and *Brandt* held that the VSTA completely preempted state law claims.

[¶ 4] The United States Supreme Court has "recognized that the Supremacy Clause, U.S. Const., Art. VI, may entail preemption of state law either by express provision, by implication, or by a conflict between federal and state law." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins.*, 514 U.S. 645, 654, 115 S.Ct. 1671, 1676, 131 L.Ed.2d 695 (1995); *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 1487, 131 L.Ed.2d 385 (1995). The Eighth Circuit recognizes an additional method of preemption where the subject matter of the legislation concerns "a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Heart of America Grain Inspection Service, Inc. v. Missouri Department of Agriculture,* 123 F.3d 1098, 1103–04 (8th Cir. 1997) (citations omitted). The Eighth Circuit has characterized the exceptions as follows:

> Preemption traditionally comes in four "flavors": (1) "express preemption," resulting from an express Congressional directive ousting state law (*Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)); (2) "implied preemption." resulting from an inference that Congress intended to oust state law in order to achieve its objective (*Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)); (3) "conflict preemption." resulting from the operation of the Supremacy Clause when federal and state law actually conflict, even when Congress says nothing about it (*Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 143, 83 S.Ct. 1210, 1218, 10 L.Ed.2d 248 (1963)); and (4) "field preemption," resulting from a determination that Congress intended to remove an entire area from state regulatory authority

(*Fidelity Fed. Savs. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982)).

*Kinley Corp. v. Iowa Utilities Bd., Utilities Div., Dept. of Commerce,* 999 F.2d 354, 358 n. 3 (8th Cir.1993).

■ [¶ 5] The ultimate touchstone of statutory preemption is congressional intent. *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 484–86, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996); *Kinley Corp. v. Iowa Utilities Bd.,* 999 F.2d 354, 357 (8th Cir.1994). "In all preemption cases ... we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Medtronic v. Lohr,* 518 U.S. at 484–85, 116 S.Ct. at 2250 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). "The historic police powers of the State include the regulation of matters of health and safety." *De Buono v. NYSA–ILA Medical and Clinical Services Fund,* 520 U.S. 806, ——, 117 S.Ct. 1747, 1751, 138 L.Ed.2d 21 (1997), citing *Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 715, 105 S.Ct. 2371, 2376, 85 L.Ed.2d 714 (1985). Defendant therefore "bears the considerable burden of overcoming 'the starting presumption that Congress does not intend to supplant state law.'" *Id.* at ——, 117 S.Ct. at 1751 (quoting *Travelers,* 514 U.S. at 654, 115 S.Ct. at 1676).

[¶ 6] The Federal act in question here is the VSTA. The VSTA was promulgated in 1913 and authorizes the Secretary of the Department of Agriculture ("USDA") to issue regulations for the preparation and sale, and the issuance of licenses for the sale of viruses serums and toxins for domestic animals. As amended in 1985, the VSTA provides, inter alia:

> The Secretary of Agriculture is authorized to make and promulgate from time to time such rules and regulations as may be necessary to prevent the preparation, sale, barter, exchange, or shipment as aforesaid of any worthless, contaminated, dangerous, or harmful virus, serum, toxin, or analogous product for use in the treatment of domestic animals, or otherwise to carry out this paragraph, and to issue, suspend, and revoke licenses for the maintenance of establishments for the preparation of viruses serums, toxins, and analogous products, for use in the treatment of domestic animals, intended for sale, barter, exchange, or shipment as aforesaid.

21 U.S.C. § 154. The agency within the USDA responsible for administering the VSTA is the Animal and Plant Health Inspection Service ("APHIS"). 9 C.F.R. § 101.2. APHIS promulgated extensive rules to implement the VSTA. 9 C.F.R. Parts 101–123.

[¶ 7] Defendant recognizes that the VSTA does not expressly preempt state law tort claims but it argues that a federal agency may preempt state law even without congressional authorization and that APHIS expressly declared its intent to preempt state law damages actions. Defendant argues that Congress did not specifically preserve state tort law remedies in the VSTA, that Congress knows how to do so, and that the broad based directive to APHIS and APHIS action carries the day for defendant. This Court disagrees.

■ [¶ 8] Judge Bennett pointed out in *Garrelts,* "[t]he phrase 'Laws of the United States' in the Supremacy Clause, the Supreme Court has held, encompasses both federal statutes and statutorily authorized federal regulations." *Garrelts v. SmithKline Beecham,* 943 F.Supp. at 1036 citing *City of New York v. FCC,* 486 U.S. 57, 63, 108 S.Ct. 1637, 1642, 100 L.Ed.2d 48 (1988). Judge Bennett applied a two-fold analysis of agency preemption: first, "did the agency intent to preempt the state law in question;" second, "if so, was that action within the scope of the agency's delegated authority?" *Garrelts v. SmithKline Beecham,* 943 F.Supp. at 1038. Agency intent to preempt state law may be either express or implied. *Id.,* citing *City of New York v. FCC,* 486 U.S. at 64, 108 S.Ct. at 1642.

■ [¶ 9] Defendant argues that APHIS declared its intent to preempt all state law requirements which are different from or in addition to those imposed by APHIS's regulation when it published the

background to a final rule on August 27, 1992, wherein APHIS stated:

> APHIS, however, does not agree that States should be allowed to add various restrictions, as appropriate, based upon a need to protect domestic animals or the public health, interest, or safety. Any restrictions, other than those which are necessary to address a local disease condition, should be Federally imposed so that they are uniform nationwide.

> \* \* \* \* \* \*

> States are not free to impose requirements which are different from or in addition to those imposed by USDA regarding the safety, efficacy, potency, or purity of a product. Similarly, labeling requirements which are different from or in addition to those in the regulations under the Act may not be imposed by the States. Such additional or different requirements would thwart the Congressional intent regarding uniform national standards and would usurp USDA's authority to determine which biologics are pure, safe, potent, and efficacious.

> \* \* \* \* \* \*

> However, where safety, efficacy, purity, and potency of biological products are concerned, it is the agency's intent to occupy the field. This includes but is not limited to the regulation of labeling.

57 Fed.Reg. 3875, 3879 (August 27, 1992). Additional support for the proposition that APHIS intended to preempt state law tort actions can be found, defendant argues, in a letter from Terry L. Medley, Acting Administrator, APHIS, of December 22, 1995, which letter was in response to a request from U.S. Senator Paul Wellstone, requesting a written clarification of the scope of APHIS's preemption of state law under the VISTA:

> Our intent in promulgating the rule was, and continues to be, to preempt States from imposing requirements either through statutes, regulations, or other means that are different from, or in addition to, those imposed by USDA regarding the safety, efficacy, potency, or purity of a product. Such requirements would include, but are not limited to production, testing, distribution, or labeling requirements. We did not intend to preempt common law actions for damages arising from noncompliance with USDA regulatory standards.

Defendant argues this letter and the comment to the Federal Regulations clearly set forth the agency's express intent to preempt state law tort actions.[1] The parties offer no authority for the proposition that an administrative agency may act officially by virtue of a letter from an acting administrator to a member of Congress. We even have one letter to plaintiffs' attorney by some APHIS official.

[¶ 10] Defendant's argument that "requirements which are different from, or in addition to, those imposed by USDA" include state law tort claims is an argument which has met with success in some cases. In *Murphy v. SmithKline Beecham,* Judge Saffels held that the APHIS regulations preempted claims for strict liability, breach of the warranties of merchantability and fitness for a particular purpose, failure to warn and negligence. 898 F.Supp. at 818 ("The Court regrets the fact that its decision leaves the plaintiff without a remedy at law, but unfortunately, we are left with no alternative. The court's decision is dictated by Congress's broad grant of authority to USDA, and the

---

1. Defendant seeks to strike paragraph 4 of the affidavit of James A. Davis, Esq., attorney for the plaintiffs, wherein he criticizes the Medley letter, claiming it arose out of a meeting with APHIS and defendant's attorneys, which meeting plaintiffs' attorney was specifically excluded from. Defendant contends the letter contains hearsay. Mr. Davis may well have personal knowledge of the information contained in the affidavit but he is not allowed to testify about his contacts with the USDA. He may not be a witness as to contested matters and act as counsel. See Rule 3.7 of the Rules of Professional Conduct. See also *Haberer v. First Bank of South Dakota, (NA),* 429 N.W.2d 62 (S.D.1988). Certainly Mr. Davis's criticisms could call into question whether that letter accurately sets forth APHIS's intent or whether it was the result of political or legal maneuvering in the midst of several court battles over this issue. The affidavit will not be stricken but will not be considered by the Court since Mr. Davis is not competent to act as a witness and as one of the attorneys of record.

agency's permissible exercise of that authority."). In *Lynnbrook Farms v. Smithkline Beecham*, the Seventh Circuit held that the APHIS regulations preempted claims for strict liability, breach of the implied warranties of fitness for a particular purpose and of merchantability, fraudulent misrepresentation and false advertising. 79 F.3d at 630 ("This is not a case involving non-compliance. Both vaccines have met APHIS standards for safety, purity, potency, and efficacy. Thus, if Lynnbrook's claims relate to these qualities, seeking to impose additional or different requirements in these areas, they are preempted."). In *Garrelts v. SmithKline Beecham*, Judge Bennett of the Northern District of Iowa held that a claim that the label is inadequate under state tort law standards, despite having been approved by APHIS, involves different or additional standards and is therefore preempted. 943 F.Supp. at 1060. However, *Garrelts* ultimately held that although APHIS intended to preempt state tort law, it had no congressional authority to preempt plaintiffs' claim for injury to humans. 943 F.Supp. at 1068.

[¶ 11] This Court respectfully declines to follow those opinions holding strict liability, breach of warranty, and tort claims are preempted by APHIS, adopting instead the rationale of the opinion in *Gresham v. Boehringer Ingelheim Animal Health, Inc.*, CIV 95–3376, 1996 WL 751126 (N.D.Ga.1996), although not entirely for the reason stated therein.

[¶ 12] None of the courts who have analyzed the regulations promulgated pursuant to the VSTA have stated that the regulations as a whole have been considered. A complete reading of APHIS's regulations, together with the Medley letter (assuming but without deciding it is entitled to some weight), compel no other conclusion than that APHIS did not intend to preempt plaintiffs' claims. To the contrary, the regulations and policy statements specifically retain plaintiffs' state law contract and tort claims.

[¶ 13] Pursuant to APHIS's rules, a manufacturer must obtain a license from APHIS to manufacture an animal vaccine. 9 C.F.R. § 102.3(a). Each license application must include "labels in finished form together with information regarding all claims to be made on labels and in advertising matter to be used in connection with or related to the biological product." 9 C.F.R. § 102.4(b)(2)(iv). Pursuant to 9 C.F.R. § 112.5(c)(1), only labels submitted for approval by APHIS may be used. APHIS specifically provides that:

> No person shall apply or affix to or include with, or cause to be applied or affixed to or included with, any carton or final container of a biological product, any label, stamp, mark or statement that is false or misleading in any particular, is not in compliance with the regulations, or is not approved by APHIS.

9 C.F.R. § 112.1(b) (emphasis supplied). This section clearly implies that no false or misleading statements may be included with the product even if they are inadvertently approved by APHIS. This section also implies that some statements may be included with the product that are not necessarily required by APHIS's regulations but are nonetheless approved by APHIS. 9 C.F.R. § 112.2 sets forth the information which must be included in the labels and enclosures. That section requires that the container include "[f]ull instructions for the proper use of the product, including ... warnings, cautions, and the like ..." 9 C.F.R. § 112.2(a)(5). Finally, 9 C.F.R. § 112.2(b) provides: "Labels may also include any other statement which is not false or misleading and may include factual statements regarding variable response of different animals when vaccinated as directed **but may not include disclaimers of merchantability, fitness for the purpose offered, or responsibility for the product.**" Clearly, APHIS's regulations intend that manufacturers will be held responsible for their products. Since neither the VSTA nor APHIS's regulations provide a cause of action for violation of the warranties of merchantability and fitness for a particular purpose or for any tort liability, APHIS must have intended to preserve consumer's state contract and tort law claims.

[¶ 14] The fact that the labels must be approved does not mean that they in fact do comply with the regulations regarding warn-

ings. David A. Espeseth, Director, Licencing and Policy Development, Center for Veterinary Biologics, sent a letter to James A. Davis, plaintiffs' attorney in this and other SmithKline Beecham litigation, on November 25, 1996, on APHIS stationary, wherein he states that

> submitting false and misleading information could cause a host of problems for the firm and could place its license in jeopardy. If such information is directly related to the production and testing of a product, it would, of course, invalidate any approval the product may have received based on such information.

This statement, when read together with the Medley letter's statement that APHIS "did not intend to preempt common law actions for damages arising from noncompliance with USDA regulatory standards" and 9 C.F.R. § 112.2(b), compels the conclusion that where the manufacturer provides incomplete or false information in support of its license application, the manufacturer has failed to comply with USDA regulatory standards and plaintiffs' common law damages actions for breach of warranty and for strict liability are not preempted by APHIS's regulations. *Gresham v. Boehringer Ingelheim Animal Health, Inc.,* 1996 WL 751126 at 3 ("To the extent that Plaintiff intends to prove that the particular batch of Alpha–7 which he received was not in compliance with federal regulations, these actions do not impose requirements different from or in addition to those established by APHIS.").

[¶ 15] The defendant has not identified a provision of the VSTA which expressly preempts state tort law. No such provision exists. Defendant's contention that a federal agency may expressly preempt state tort law even without congressional authorization and that APHIS has expressly preempted state tort law has been rejected above. Even if it were concluded that APHIS did intend to completely preempt state tort law, defendant's motion for summary judgment should be denied. "Whether federal law preempts state law is a question of congressional intent, not the regulating agency's intent. *Heart of America Grain Inspection Service, Inc. v. Missouri Department of Agriculture,*

123 F.3d at 1105 (8th Cir.1997). "The critical question in any pre-emption analysis is always whether Congress intended that federal regulation supersede state law." *Iowa Utilities Bd. v. F.C.C.,* 120 F.3d 753, 798 (8th Cir.1997), citing *Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 369, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986). Nothing in the VSTA leads to any conclusion that state tort law remedies would or could be preempted by APHIS. The purpose of the VSTA was "to prevent the production and sale of any 'worthless, contaminated, dangerous or harmful' animal vaccines." *Lynnbrook Farms v. Smithkline Beecham,* 79 F.3d at 625. The Seventh Circuit held in *Lynnbrook* that where the Congressional mandate is broad, the agency's choice to preempt will not be disturbed unless the statute clearly prevents preemption. *Id.* at 625–626. This Court declines to adopt so broad an interpretation of the federal preemption doctrine.

[¶ 16] If this case was proceeding in state court, the defendant would have to convince the state court that APHIS may also nullify Art. VI, § 20, of the South Dakota Constitution, as interpreted in *Baatz v. Arrow Bar,* 426 N.W.2d 298 (S.D.1988), aff'd. 452 N.W.2d 138 (S.D.1990).

[¶ 17] Defendant relies on *Medtronic v. Lohr* for the proposition that the word "requirements" preempts state law damages actions. Medtronic involved the Medical Devices Amendments of 1976 ("MDA"), 21 U.S.C. § 360c et seq., and its application to claims of negligence and strict liability in the manufacture of a pacemaker. The MDA specifically provides that

> "no State or political subdivision of any State may establish or continue in effect with respect to a device intended for human use any requirement (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter."

21 U.S.C. § 360k(a). Medtronic argued that the word "requirement" preempts any com-

mon law claims being brought by an injured plaintiff against a manufacturer of medical devices. The Supreme Court rejected this argument in a plurality opinion. *Medtronic v. Lohr*, 518 U.S. at 486–88, 116 S.Ct. at 2251 (plurality opinion). Four justices joined in that opinion, one justice concluded that the term "requirements" preempts all state common law causes of action and four justices agreed with the plurality that defective design claims are not preempted but concluded that failure to warn claims are preempted. Defendant also relies on the Supreme Court's opinion in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521, 112 S.Ct. 2608, 2620, 120 L.Ed.2d 407 (1992), where a plurality of the Supreme Court agreed that state common law damages actions do impose "requirements" different than those under the Public Health Cigarette Smoking Act of 1969. However, *Cipollone* concluded that state law products liability, failure to warn, breach of express warranty and fraudulent misrepresentation claims were not preempted by the term "requirements".

[¶ 18] Defendant seeks to impose the federal preemption doctrine to prevent plaintiffs from obtaining any relief. That is, in fact, the result obtained in every case where SmithKline Beecham has convinced the court that the VSTA and APHIS's regulations preempt state law tort actions. The United States Supreme Court criticized this result in *Medtronic v. Lohr.*

> Medtronic's argument is not only unpersuasive, it is implausible, Under Medtronic's view of the statute, Congress effectively precluded state courts from affording state consumers any protection from injuries resulting from a defective medical device. Moreover, because there is no explicit private cause of action against manufacturers contained in the MDA, and no suggestion that the Act created an implied private right of action, Congress would have barred most, if not all, relief for persons injured by defective medical devices. Medtronic's construction of § 360k would therefore have the perverse effect of granting complete immunity from design defect liability to an entire industry that, in the judgment of Congress, needed more stringent regulation in order "to provide for the safety and effectiveness of medical devices intended for human use." It is, to say the least, "difficult to believe that Congress would. without comment, remove all means of judicial recourse for those injured by illegal conduct," and it would take language much plainer than the text of § 360k to convince us that Congress intended that result.

*Medtronic v. Lohr,* 518 U.S. at 486–88, 116 S.Ct. at 2251 (plurality opinion) (citations omitted). Such a result is not statutorily mandated by the VSTA and is not clearly provided for in the regulations promulgated by APHIS. Defendant's claim is therefore rejected.

## ORDER

[¶ 19] IT IS ORDERED:

(1) Defendant's motion for summary judgment, Doc. 52, is denied.

(2) Defendant's motion to strike, Doc. 71, is denied.

[¶ 20] Dated this 1st day of October, 1997.

## ORDER ON MOTION

[¶ 1] Defendant SmithKline Beecham Corporation ("SmithKline") has moved the Court, without any citation of authority, including any reference to the Federal Rules of Civil Procedure, to reconsider this Court's order denying defendant's motion for summary judgment which was dated October 1, 1997, and filed October 7, 1997, *Symens v. SmithKline Beecham Corp.,* 1997 DSD 29. SmithKline has thus violated D.S.D. LR 7.2(A). SmithKline has also violated D.S.D. LR 7.2(B). The Court will decide the motion without oral argument.

[¶ 2] The motion for reconsideration is denied. The Court remains unpersuaded by the arguments of SmithKline.

[¶ 3] In addition to denying the motion on the merits, the Court will deny the motion to reconsider because it is, without question, procedurally improper. The Federal Rules of Civil Procedure do not allow a

"motion to reconsider." *Anthony v. Runyon,* 76 F.3d 210, 215 (8th Cir.1996), *Humphreys v. Roche Biomedical Laboratories, Inc.,* 990 F.2d 1078, 1081 (8th Cir.1993); and *In re Trout,* 984 F.2d 977, 978 (8th Cir.1993) (warning counsel that the Federal Rules of Civil Procedure do not provide for a motion for reconsideration and directing counsel to properly designate a motion under the rule authorizing the motion). As stated in *Trout: "The Federal Rules of Civil Procedure do not provide for such a motion." In re Trout,* 984 F.2d at 978. It is clear that SmithKline has failed to follow existing law in this Circuit and has failed to cite or argue any procedural basis for the motion. If the practice followed by SmithKline were to be allowed, the next step could be a motion to reconsider a denial of a motion for a reconsideration, ad infinitum.

[¶ 4] The motion should be denied, on the merits and because of procedural violations.

[¶ 5] Defendant filed an alternative motion for certification for interlocutory appeal and stay, Doc. 79. The order denying defendant's motion for summary judgment involves a controlling question of law as to which there is substantial ground for difference of opinion. An immediate appeal from the order may materially advance the ultimate termination of this litigation. 28 U.S.C. § 1292(b).

[¶ 6] The request for a stay under certain conditions is appropriate. This litigation, if it proceeds to trial, will undoubtedly result in the expenditure of substantial resources of both the litigants and the Court. The appeal may completely terminate this litigation and another pending case in this District and Division involving very similar issues.

Now, therefore,

[¶ 7] IT IS ORDERED:

(1) Defendant's so-called motion for reconsideration, Doc. 79, is denied, along with defendant's request for oral argument.

(2) Defendant's motion for certification pursuant to 28 U.S.C. § 1292(b), Doc. 79, is granted.

(3) This matter is stayed until further order of the Court, conditioned, however, on (a) defendant making timely application to the United States Court of Appeals for the Eighth Circuit, (b) the application being granted, and (c) the defendant acting expeditiously as to such appeal, if permitted.