1999 D.S.D. 37

Roger STANTON and Diane
Stanton, Plaintiff,

v.

STATE FARM FIRE AND CASUALTY
COMPANY, INC., Defendant.

No. Civ 99–1033.

United States District Court,
D. South Dakota,
Northern Division.

Dec. 27, 1999.

Lee A. Schoenbeck, Schoenbeck Law, Watertown, SD, for plaintiff.

John E. Simko, Jr., Woods, Fuller, Shultz & Smith P.C., Sioux Falls, SD, for defendant.

## ORDER DENYING MOTION TO DISMISS

KORNMANN, District Judge.

### INTRODUCTION

[¶ 1] Roger and Diane Stanton ("Stantons"), residents of Watertown, Codington County, South Dakota, owned a building housing a restaurant which was insured by a standard flood insurance policy ("SFIP") issued by State Farm Fire and Casualty Company, Inc. ("State Farm") in its name. Stantons suffered damage to their building as a result of the substantial flooding which took place in Northeastern South Dakota in the spring of 1997. Dakota Claims Service [1] of Aberdeen, South Dakota, adjusted the Stantons' claims and State Farm offered Stantons a settlement of all their claims. Stantons were not satisfied

---

1. Dakota Claims Service was originally named in the complaint but was subsequently dismissed based upon the stipulation of the parties.

with the settlement offer as to their claims and instituted an action in Circuit Court in Codington County, South Dakota, alleging that they were entitled to recover under the policy and that State Farm had breached its duty of good faith and fair dealing and intentionally inflicted emotional distress on Stantons.[2] Stantons seek as damages their claimed pecuniary loss plus interest, punitive damages, and attorney fees. State Farm removed this action to Federal Court, pursuant to 28 U.S.C. § 1446(a), and filed a motion to dismiss. The basis of the motion to dismiss is State Farm's assertion that Stantons' state law claims are preempted by the National Flood Insurance Act of 1968 ("NFIA"), 42 U.S.C. § 4001 et seq.

[¶ 2] It is appropriate at this juncture to examine what claims might be viable under South Dakota law, given the allegations of Stantons. The request for attorney fees would be governed by *SDCL 58–12–3* but only to the extent that recovery for damages is sought under the policy. No fees could be allowed as to any cause of action sounding in tort. Stantons would have to prove that State Farm refused to pay the full amount of the loss and that such refusal was "vexatious or without reasonable cause." There is apparently no possibility that FEMA could be held liable for attorney fees.

[¶ 3] As to the claim for breach of contract, i.e. refusal to pay under the policy, *SDCL 21–2–1* would govern. FEMA is apparently obligated to indemnify State Farm for what was due under the express terms of the policy. What is due under the policy itself is to be determined under federal common law principles. Stantons allege that the failure to properly adjust the claim and the failure of State Farm to pay under the policy caused them loss of business. Such a claim could, in the language of the statute, be used to compensate Stantons for "the amount which will compensate *** for all the detriment proximately caused thereby, or which, in the

ordinary course of things, would be likely to result therefrom." Again, there is apparently no possibility that FEMA could be held liable for such a claim since the SFIP does not cover business interruption losses.

[¶ 4] There is also apparently no possibility that FEMA could be liable for punitive damages. *SDCL 21–3–2* tells us that only in an "action for the breach of an obligation not arising from contract" may punitive damages be awarded. An action for breach of the insurance policy obviously does not allow the recovery of punitive damages. *Stoner v. State Farm Mut. Automobile Ins. Co.*, 780 F.2d 1414, 1419 (8th Cir.1986); *Thu v. American Family Ins. Co.*, 292 N.W.2d 109, 110 (S.D.1980). Under the statute, it is also clear that, even in a cause of action arising in tort, punitive damages are not recoverable unless State Farm was "guilty of oppression, fraud, or malice, actual or presumed, *** committed intentionally or by willful and wanton misconduct, in disregard of humanity ***." Stantons have alleged breach of the implied covenant of good faith and fair dealing. The Court has read a number of cases, including *Garrett v. BankWest*, 459 N.W.2d 833 (S.D.1990), *High Plains Genetics Research, Inc. v. JK Mill–Iron Ranch*, 95 SDO 349, 535 N.W.2d 839, *Swanson v. Sioux Valley Emp. Electric Ass'n, Inc.*, 95 SDO 447, 535 N.W.2d 755, *Matter of Cert. of a Question of Law*, 399 N.W.2d 320 (S.D.1987), *Nelson v. WEB Water Dev. Assoc.*, 507 N.W.2d 691 (S.D. 1993), *Isaac v. State Farm Auto. Ins. Co.*, 94 SDO 874, 522 N.W.2d 752, *Grynberg v. Citation Oil & Gas Corp.*, 1997 SD 121, 573 N.W.2d 493, and *Stene v. State Farm Mutual Auto. Ins. Co.*, 1998 SD 95, 583 N.W.2d 399. *Stene* tells us, relying in part on *Matter of Cert. of a Question of Law, supra*, that a violation of State Farm's "duty of good faith and fair dealing constitutes a tort, even though it is also a breach of contract." *Id.* at 322. For the tort to

---

2. A third claim for negligence was alleged only as to Dakota Claims Service and is no longer an issue because of the dismissal of that party.

exist, there must be an absence of a reasonable basis for denial of the policy benefits or a failure to comply with a duty under the insurance contract. There must be knowledge on the part of State Farm or reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by Stantons. Obviously, State Farm has the right to challenge claims which are fairly debatable. They have no obligation to "roll over and play dead." Again, there appears to be no possibility that FEMA has any interest as to a claim that State Farm breached the its duty of good faith and fair dealing. The only significance of the claim for breach of the duty of good faith and fair dealing is that such tort claim may open the door for the recovery of punitive damages against State Farm under the limitations as explained above.

[¶ 5] Finally, Stantons have alleged a claim for intentional infliction of emotional distress. This claim and the requirements for a prima facie case are also discussed in *Stene.* FEMA would apparently have no interest as to this claim.

### DECISION

[¶ 6] The District Court must accept the allegations of the complaint as true when considering a Rule 12(b) motion to dismiss. *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir.1996). Dismissal under Rule 12(b)(6) is appropriate only when it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Dover Elevator Co. v. Arkansas State Univ.,* 64 F.3d 442, 445 (8th Cir.1995). When considering a motion to dismiss, the district court must construe the complaint liberally and assume all factual allegations to be true. *Whisman ex rel. Whisman v. Rinehart,* 119 F.3d 1303, 1308 (8th Cir.1997).

[¶ 7] State Farm contends that Stantons' claims are preempted by the NFIA. Stantons assert their claims are not preempted, based upon a 1981 amendment to the NFIA found at 42 U.S.C. § 4081(c). The

issue of federal preemption is one of law for the court to decide. This Court has previously discussed the standards in considering a claim of preemption in *Symens v. Smithkline Beecham Corp.,* 1997 DSD 29, 19 F.Supp.2d 1062 (D.S.D.1997)[3]:

The United States Supreme Court has "recognized that the Supremacy Clause, U.S. Const., Art. VI, may entail preemption of state law either by express provision, by implication, or by a conflict between federal and state law." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins.,* 514 U.S. 645, 654, 115 S.Ct. 1671, 1676, 131 L.Ed.2d 695 (1995); *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 1487, 131 L.Ed.2d 385 (1995). The Eighth Circuit recognizes an additional method of preemption where the subject matter of the legislation concerns "a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Heart of America Grain Inspection Service, Inc. v. Missouri Department of Agriculture,* 123 F.3d 1098, 1101–04 (8th Cir. 1997) (citations omitted). The Eighth Circuit has characterized the exceptions as follows:

Preemption traditionally comes in four "flavors": (1) "express preemption," resulting from an express Congressional directive ousting state law (*Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)); (2) "implied preemption," resulting from an inference that Congress intended to oust state law in order to achieve its objective (*Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)); (3) "conflict preemption," resulting from the operation of the Supremacy Clause when federal and state law actually conflict, even when Congress says nothing about it (*Florida Lime & Avocado Growers, Inc. v. Paul,* 373

---

**3.** *Reversed, in part, on other grounds,* 152   F.3d 1050 (8th Cir.1998).

U.S. 132, 143, 83 S.Ct. 1210, 1218, 10 L.Ed.2d 248 (1963)); and (4) "field preemption," resulting from a determination that Congress intended to remove an entire area from state regulatory authority (*Fidelity Fed. Sav[ing]s & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982)).

*Kinley Corp. v. Iowa Utilities Bd., Utilities Div., Dept. of Commerce,* 999 F.2d 354, 358 n. 3 (8th Cir.1993).

The ultimate touchstone of statutory preemption is congressional intent. *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 483–84, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996); *Kinley Corp. v. Iowa Utilities Bd.,* 999 F.2d 354, 357 (8th Cir.1993). "In all preemption cases ... we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Medtronic v. Lohr,* 518 U.S. at 484–85, 116 S.Ct. at 2250 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). "The historic police powers of the State include the regulation of matters of health and safety." *De Buono v. NYSA–ILA Medical and Clinical Services Fund,* 520 U.S. 806, 812–13, 117 S.Ct. 1747, 1751, 138 L.Ed.2d 21 (1997), citing *Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 715, 105 S.Ct. 2371, 2376, 85 L.Ed.2d 714 (1985). Defendant therefore "bears the considerable burden of overcoming 'the starting presumption that Congress does not intend to supplant state law.'" *Id.* at 813, 117 S.Ct. at 1751 (quoting *Travelers,* 514 U.S. at 654, 115 S.Ct. at 1676).

*Symens v. Smithkline Beecham,* 1997 DSD 29, 19 F.Supp.2d at 1064–65.

[¶ 8] Whether the NFIA preempts state law tort claims is apparently one of first impression in the District of South Dakota and, indeed, in the Eighth Circuit. Any analysis must begin with an understanding of the Act. The NFIA, 42 U.S.C. §§ 4001 –

4129, establishes the National Flood Insurance Program ("NFIP"). "The NFIP is a federally supervised and guaranteed insurance program presently administered by the Federal Emergency Management Agency ("FEMA") pursuant to the NFIA and its corresponding regulations. *See* 44 C.F.R. §§ 59.1–77.2." *Van Holt v. Liberty Mut. Fire Ins. Co.,* 163 F.3d 161, 165 (3rd Cir.1998). Initially, under the NFIA, a private pool of insurance companies issued flood insurance policies and administered the NFIP under a contract with the United States Department of Housing and Urban Development ("HUD"). 42 U.S.C. §§ 4051–53; *Van Holt v. Liberty Mut.,* 163 F.3d at 165. This arrangement is known as the Part A program. *See* PL 90–448, Title XIII, Ch II, Part A (authorizing an "Industry Flood Insurance Pool"). Part A is codified at 42 U.S.C. §§ 4051 – 4056. In 1968 Congress also authorized "Federal Operation of the Program" wherein the federal government would assume the operational responsibility for flood insurance, utilizing private insurance companies as fiscal agents of the United States. This arrangement is known as the Part B program. *See* PL 90–448, Title XIII, CH II, Part B, codified at 42 U.S.C. §§ 4071 – 4072. In 1978, HUD ended its contractual relationship with the pool and FEMA began administering the NFIP through the Flood Insurance Administration ("FIA") pursuant to 42 U.S.C. § 4071. *Van Holt v. Liberty Mut.,* 163 F.3d at 165. The Part A program has been discontinued and flood insurance policies are now issued only in accordance with Part B of the NFIA. *Id.* at 166.

[¶ 9] This action concerns a policy written pursuant to the "Write Your Own" ("WYO") program which was authorized by Congress in 1983. *See* 42 U.S.C. § 4081(a); 44 C.F.R. §§ 62.23–.24.

Under this program, private insurance companies like [State Farm Fire and Casualty Company, Inc.] write their own insurance policies. 44 C.F.R. § 62.23. The WYO companies must then remit

the insurance premiums to the Flood Insurance Administration ("FIA"); however, the companies may keep funds required to meet current expenditures, which are limited to five thousand dollars. *See* 44 C.F.R. Pt. 62, App. A., Art. VII(B). When WYO companies deplete their net premium income, a phenomenon that occurs regularly because the companies must forfeit a significant portion of the proceeds from premiums, they draw money from FEMA through letters of credit to disburse claims. *See* 44 C.F.R. Pt. 62 App. A, Art. IV(A). Thus, regardless whether FEMA or a WYO company issues a flood insurance policy, the United States treasury funds pay off the insureds' claims. *See Gowland v. Aetna,* 143 F.3d 951, 955 (5th Cir.1998); *Spence,* 996 F.2d at 795 n. 12; *In re Estate of Lee,* 812 F.2d at 256. *Van Holt v. Liberty Mut.,* 163 F.3d at 165.

[¶ 10] Turning to the preemption analysis, the Court notes that the Act does not expressly preempt state law claims and State Farm does not contend that it does. *See also Spence v. Omaha Indem. Ins. Co.,* 996 F.2d 793, 797 n. 20 (5th Cir.1993). Instead, State Farm contends that "the NFIA is comprehensive in scope" and was "conceived to achieve policies which are national in scope" and the Act thus preempts state law claims. This amounts to a field preemption claim. The cases cited by State Farm, however, have not addressed the preemption analysis per se and are thus not directly on point.

[¶ 11] State Farm relies heavily upon *West v. Harris,* 573 F.2d 873, 881 (5th Cir.1978). *West* involved a claim against HUD under Part A of the Act and plaintiff's claims for a statutory penalty and attorneys fees for claimed arbitrary refusal to pay a claim. The case was originally filed in state court but was removed by defendant pursuant to 28 U.S.C. § 1332. The *West* court reviewed the Act and the regulations promulgated thereunder and concluded:

> Congress has undertaken to regulate the claims adjustment process and judicial review thereof, and nowhere in these statutory sections or in the regulations implementing them . . . is there any mention of use of the statutory law of the forum state on any issue. . . . Since the flood insurance program is a child of Congress, conceived to achieve policies which are national in scope, and since the federal government participates extensively in the program both in a supervisory capacity and financially, it is clear that the interest in uniformity of decision present in this case mandates the application of federal law.

*West v. Harris,* 573 F.2d at 880–81. *West* does not stand for the proposition that all state law causes of action are preempted. Indeed, the opinion does not even mention the word preemption. What *West* held was that "a prevailing plaintiff in a suit on a flood insurance policy issued pursuant to the National Flood Insurance Act is not entitled to recover the statutory penalty and attorney's fees allowed by state insurance law for arbitrary denial of coverage." *West v. Harris,* 573 F.2d at 881. The *West* court itself summed up its holding: "[F]ederal law controls disputes over *coverage* of insurance policies issued pursuant to the National Flood Insurance Act of 1968." *West v. Harris,* 573 F.2d at 881 (emphasis supplied).

[¶ 12] The Fifth Circuit reiterated its *West* holding in *Hanover Bldg. Materials, Inc. v. Guiffrida,* 748 F.2d 1011, 1013 (5th Cir.1984), where it held that disputes over coverage arising under the NFIA are governed by federal law. Like *West, Hanover* involved a suit against the federal government (this time FEMA) under a claim of coverage. The *Hanover* court concluded that, in such a claim, federal law and not state law governs the award of attorney fees. *Hanover Bldg. Materials, Inc. v. Guiffrida,* 748 F.2d at 1015.

[¶ 13] The Eastern District of Louisiana, which is obligated to follow Fifth Circuit precedent, has likewise held that "extra-contractual claims" for penalties, attorney fees and punitive damages are not autho-

rized by the NFIA under federal law. *Durkin v. State Farm Mut. Ins. Co.*, 3 F.Supp.2d 724, 728–29 (E.D.La.1997). Unlike *West* and *Hanover*, *Durkin* involved a claim against the WYO company rather than against HUD or FEMA. Although *Durkin* does not tell us what the alleged cause of action was, it is clear from the opinion's conclusion, namely that "any damages that are payable to the claimant are paid out of the government's pocket," that the claim was for recovery under the policy and under the NFIA. *See Durkin v. State Farm Mut. Ins. Co.*, 3 F.Supp.2d at 729.

[¶ 14] None of the foregoing cases answer the issue present herein. That issue is whether state law tort causes of action against the WYO company are preempted. None of the foregoing cases employed a preemption analysis and none concerned separate state law tort claims, only the types of damages available for claims arising under §§ 4053 and 4072 of the Act. In the present case, no damages are sought or may be recovered against the federal government and State Farm may not seek indemnity against FEMA. 42 U.S.C. § 4081(c).

[¶ 15] The Third Circuit in *Van Holt, supra,* while not addressing the issue of preemption per se, correctly employed an analysis of the statutory and regulatory scheme to determine that the federal district courts have jurisdiction over state law fraud claims against an insurer. *Van Holt v. Liberty Mut. Fire Ins. Co.,* 163 F.3d at 167. The case is instructive as an overview of both the NFIA and its jurisdictional provisions. *Van Holt* correctly points out that the NFIA sets forth two jurisdictional provisions. 42 U.S.C. § 4053 governs the adjustment and payment of claims and judicial review over claims involving Part A of the NFIA. PL 90–448, Title XIII, Ch II, Part A, Sect. 1333. 42 U.S.C. § 4072 governs the adjustment and payment of claims and judicial review over claims involving Part B of the NFIA. PL 90–448, Title XIII, Ch II, Part A, Sect. 1341. We know that flood insurance is now issued only under Part B and, there-

fore, 42 U.S.C. § 4053 is not applicable. *Van Holt v. Liberty Mut. Fire Ins. Co.,* 163 F.3d at 166.

[¶ 16] 42 U.S.C. § 4072 provides, in part, that a claimant may, upon disallowance of a claim by the Director (of FEMA), "institute an action against the Director on such claim in the United States district court" which has "original exclusive jurisdiction ... to hear and determine such action without regard to the amount in controversy." This Court concludes that § 4072 is a grant of jurisdiction only as to claims against FEMA founded on disallowance of a flood insurance claim. *Van Holt* came to the contrary conclusion that " § 4072 provides subject-matter jurisdiction for an insured's suits against a WYO arising out of a disputed flood insurance claim though the plain text appears to restrict the reach of § 4072 to suits against FEMA" because (a) a WYO company is a fiscal agent of the United States, (b) FEMA regulations provide for reimbursement to WYO companies for costs of defending such claims, and (c) flood insurance claims are ultimately paid for by FEMA. *Van Holt v. Liberty Mut. Fire Ins. Co.,* 163 F.3d at 166. *Van Holt* concluded that plaintiffs' state law fraud and bad faith causes of action, although sounding in tort, "are intimately related to the disallowance of their insurance claim" and thus the district court had subject-matter jurisdiction over the causes of action under 42 U.S.C. § 4072. *Van Holt v. Liberty Mut. Fire Ins. Co.,* 163 F.3d at 167. Although concluding that jurisdiction existed, *Van Holt* declined to determine whether the state law causes of action were preempted because the court determined that the causes of action lacked merit in any event. *Van Holt v. Liberty Mut. Fire Ins. Co.,* 163 F.3d at 169 n. 6.

[¶ 17] This Court declines to expand the clear language of § 4072. However, jurisdiction is not an issue here as diversity under 28 U.S.C. § 1332 clearly exists as set forth in the pleadings. The rule of *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58

S.Ct. 817, 82 L.Ed. 1188 (1938), in general, requires adherence to the appropriate substantive law of a particular state in a diversity case. *Erie,* of course, does not establish a cause of action if that cause of action is preempted under federal law. So, while jurisdiction exists, the causes of action may nevertheless be preempted.

[¶ 18] Recognizing that the Third Circuit in *Van Holt* declined to address whether the NFIA preempts state law causes of action, the District of New Jersey has held nonetheless that "it would be contrary to the purpose and functioning of the Act to allow plaintiff's State common law claims for punitive damages and attorney's fees to proceed in this case." *3608 Sounds Ave. Condo. Ass'n v. South Carolina Ins. Co.,* 58 F.Supp.2d 499, 502 (D.N.J.1999). The District of New Jersey relied upon *Hanover* and *West* in concluding that those claims were preempted. As set forth above, *Hanover* and *West* do not stand for the proposition that all state tort claims are preempted. Thus, although federal law may be applicable to claims arising under the NFIA, *3608 Sounds Ave. Condo. Ass'n v. South Carolina Ins. Co.,* 58 F.Supp.2d at 502, federal law does not necessarily preempt claims arising out of the breach of state law duties by WYO companies.

[¶ 19] A district court in the Eleventh Circuit has also relied upon *West* to conclude that state common law remedies are preempted by the NFIA. *Stapleton v. State Farm Fire & Cas. Co.,* 11 F.Supp.2d 1344 (M.D.Fla.1998). In *Stapleton,* plaintiffs sued the WYO company and the agent, seeking a declaration of their rights under the policy and, in addition, alleged that defendants were liable for breach of contract, fraud in the inducement, and deceptive and unfair trade practices. *Stapleton v. State Farm,* 11 F.Supp.2d at 1346. The *Stapleton* court relied upon the language of 42 U.S.C. § 4053 in holding that the court "may only review those cases that involve disputes in coverage, or breach of contract causes of action deriving from a denial of insurance claims." *Stapleton v. State Farm,* 11 F.Supp.2d at 1346. Of course, we know that § 4053 applies only to pre–1981 "pool" policies issued under Part A. *Stapleton* went on to conclude that neither the NFIA nor the policy provide subject matter jurisdiction for state law causes of action. *Id.* at 1347. In this case, subject matter jurisdiction is authorized under the diversity statute, 28 U.S.C. § 1332. Finally, *Stapleton* concluded that, based upon the absence of legislative intent that the statutory law of the forum state apply, the state law claims must be dismissed. *Stapleton v. State Farm,* 11 F.Supp.2d at 1347. We know of course that the test is not whether Congress has expressly allowed state law claims but whether Congress has expressly disallowed such claims. The presumption is that Congress did not intend to supplant state law. *De Buono v. NYSA–ILA Medical and Clinical Services Fund,* 520 U.S. 806, 812–14, 117 S.Ct. at 1751, 138 L.Ed.2d 21 (*quoting Travelers,* 514 U.S. at 654, 115 S.Ct. at 1676). In any event, the courts of the Eleventh Circuit are bound to follow the law of the Fifth Circuit as that law existed prior to October 1, 1981, the date that the Fifth Circuit was split into the Fifth and Eleventh Circuits. *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc). *Stapleton* was bound to apply *West* and, like State Farm herein, it is respectfully submitted, misread the extent of *West.*

[¶ 20] The Fifth Circuit has more recently limited its holding in *West* and has held that state law claims against WYO insurers are not preempted by the NFIA. *Spence v. Omaha Indem. Ins. Co.,* 996 F.2d 793 (5th Cir.1993). The *Spence* court noted that "[w]hile the national policies underlying the NFIP and extensive federal role therein impel our conclusion that federal common law governs claims under flood insurance policies [citing *West* ], the same does not apply in actions for tortious misrepresentation against WYO insurers." *Spence v. Omaha Indem.,* 996 F.2d at 796. As the Fifth Circuit in *Spence* explained:

FEMA regulations accord substantial autonomy to WYO companies in SFIP marketing and claims adjustment [44 C.F.R. § 62.23(e) ], and expressly provide that 'WYO Companies shall not be agents of the Federal Government.' [44 C.F.R. § 62.23(g) ]. Further, while WYO insurers may draw on FEMA letters of credit to pay SFIP claims, the WYO–FEMA agreement does not permit such draws to cover a WYO company's liability for fraud. [44 C.F.R. 62.23(a), 44 C.F.R. Pt. 62., App. A, Art III, Secs. (C), (D)(2) and (E), and 42 U.S.C. § 4081(c)].
*Spence v. Omaha Indem.*, 996 F.2d at 796.

■ [¶ 21] Relying in part on *Spence*, the Central District of California recently held that the NFIA does not preempt state law claims for breach of the implied covenant of good faith and fair dealing. *Cohen v. State Farm Fire & Cas. Co.*, 68 F.Supp.2d 1151 (C.D.Cal.1999). *Cohen* is, in the humble opinion of this Court, the first decision with an in depth analysis of the NFIA and its regulations and the application of the preemption principles set forth earlier in this opinion. Accordingly, it is of great value in addressing this issue.

[¶ 22] We begin with the NFIA's grant of federal jurisdiction. 42 U.S.C. § 4072 provides jurisdiction only for claims against the Director (of FEMA) on a claim of disallowance or partial disallowance. In 1981, Congress enacted 42 U.S.C. § 4081(c) which provides, in part:

> The Director of the Federal Emergency Management Agency shall hold any agent or broker selling or undertaking to sell flood insurance under this title harmless from any judgment for damages against such agent or broker as a result of any court action by a policyholder or applicant arising out of an error or omission on the part of the Federal Emergency Management Agency, and shall provide any such agent or broker with indemnification, including court costs and reasonable attorney fees, arising out of and caused by an error or omission on the part of the Federal Emergency Management Agency and its

contractors. **The Director of the Federal Emergency Management Agency may not hold harmless or indemnify an agent or broker for his or her error or omission.**

42 U.S.C. § 4081(c) (emphasis supplied).

■ [¶ 23] "The phrase 'Laws of the United States' in the Supremacy Clause, the Supreme Court has held, encompasses both federal statutes and statutorily authorized federal regulations." *Garrelts v. SmithKline Beecham Corp.*, 943 F.Supp. 1023, 1036 (N.D.Iowa 1996), *citing New York v. FCC*, 486 U.S. 57, 63, 108 S.Ct. 1637, 1642, 100 L.Ed.2d 48 (1988). This Court must therefore review the regulations issued under the NFIA in conducting a preemption analysis. The FEMA regulations are extensive and are found at 44 C.F.R. Only Part 63 pertains to the issuance of flood insurance policies and adjustment of claims by WYO companies. Under the 1996 regulations, WYO companies issuing flood insurance coverage "arrange for the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance it issues under the Program, based upon the terms and conditions of the Standard Flood Insurance Policy." 44 C.F.R. § 62.23(d). A WYO company is bound to "use its own customary standards, staff and independent contractor resources, as it would in the ordinary and necessary conduct of its own business affairs." 44 C.F.R. § 62.23(e). The regulations specifically provide that "WYO Companies shall not be agents of the Federal Government and are solely responsible for their obligations to their insureds under any flood insurance policies issued under agreements entered into with the Administrator." 44 C.F.R. § 62.23(g). The WYO companies adjust claims in accordance with their company's general standards, 44 C.F.R. § 62.23(i)(1) and "the responsibility for defending claims will be upon the Write Your Own Company...." 44 C.F.R. § 62.23(i)(6).

[¶ 24] In 1997, FEMA issued regulations setting forth the "Financial Assis-

tance/Subsidy Arrangement" with WYO companies. 44 C.F.R. Part 62, App. A. Article III provides for some reimbursement to the WYO company. The Article specifically provides:

Loss payments include payments as a result of litigation which arises under the scope of this Arrangement, and the Authorities set forth above.... The Company will be reimbursed for errors and omissions only as set forth at Article IX of this Arrangement.... To ensure reimbursement of costs expended to defend a claim in litigation against the Company, the Company must promptly notify FIA.... Following receipt of notice of such claim, the Office of General Counsel (OGC), FEMA, shall review the information submitted. If it is determined that the claim is grounded in actions by the Company that are outside the scope of the Arrangement, the National Flood Insurance Act, and 44 CFR Chapter 1, subchapter B, and/or involve issues of insurer/agent negligence as discussed in Article IX of the Arrangement, the OGC shall make a recommendation to the Administrator as to whether the claim is grounded in actions by the Company that are significantly outside the scope of this Arrangement. In the event the Administrator determines that the claim is grounded in actions by the Company that are significantly outside the scope of this Arrangement, the Company will be notified, in writing, within thirty (30) days of the Administrator's decision, if the decision is that any award or judgment for damages arising out of such actions will not be recognized under Article III of this Arrangement as a reimbursable loss cost, expense or expense reimbursement....

44 C.F.R. Part 62, App. A, Article III, Secs. D(2)(3), and (4). There is nothing in the present record to tell us whether or not State Farm has notified FIA or, if FIA was notified, what the response was. Article IX to that appendix provides, in part:

The parties shall not be liable to each other for damages caused by inadver-tent delay, error, or omission made in connection with any transaction under this Arrangement. In the event of such actions, the responsible party must attempt to rectify that error as soon as possible after discovery of the error and act to mitigate any costs incurred due to that error. In the event that steps are not taken to rectify the situation and such action leads to claims against the company, the NFIP, or other related entities, the responsible party shall bear all liability attached to that delay, error or omission to the extent permissible by law.

44 C.F.R. Part 62, App. A, Art IX.

[¶ 25] These regulations thus contemplate that actions may be commenced against WYO insurers for "errors" or "omissions" but insulate the federal government against such claims. "FEMA regulations disclaiming any agency relationship with WYO companies, as well as the terms of the FEMA–WYO agreement, more indicate intent to leave those insurers responsible for their own tortious conduct" than they indicate an intent to insulate those insurers from the tortious conduct of their agents. *Spence v. Omaha Indem.*, 996 F.2d at 797. "Since there is no provision in the NFIA for holding insurers liable for errors or omissions, the most logical conclusion to be drawn from [these] statutory provision[s] is that Congress contemplated that state tort law could apply to the conduct of insurers." *Cohen v. State Farm*, 68 F.Supp.2d 1151, 1156–57. Clearly, state tort claims were contemplated and were not expressly prohibited.

[¶ 26] The Court is mindful of those cases which have held that "the flood insurance program is a 'child of Congress, conceived to achieve policies which are national in scope ... and the federal government participates extensively in the program both in a supervisory capacity and financially ....'" and that these considerations warrant the application of federal law. *3608 Sounds Ave. Condo. Ass'n v.*

*South Carolina Ins. Co.*, 58 F.Supp.2d at 502; *Durkin v. State Farm*, 3 F.Supp.2d at 729; *West v. Harris*, 573 F.2d at 881. While this Court does not disagree with those courts that federal law applies to claims under the NFIA, this Court does not agree that such general principle amounts to field preemption of all state law tort claims. The regulations themselves dispel any conclusion that field preemption was intended. State Farm has failed to carry its burden of establishing preemption. *Cohen v. State Farm*, 68 F.Supp.2d at 1154–55, *citing Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1526 n. 6 (9th Cir.1995).

## ORDER

[¶ 27] Based upon the foregoing,

[¶ 28] IT IS ORDERED that defendant's motion to dismiss, Doc. 7, is denied.