James **SCHERZ**, Plaintiff,

v.

**SOUTH CAROLINA INSURANCE COMPANY**, Defendant.

No. CV 99–13486 AHM (RZx).

United States District Court, C.D. California.

Sept. 21, 2000.

Martin R. Fox, Los Angeles, CA, for plaintiff.

Gary R. Gleason, Farbstein & Blackman, San Mateo, CA, Gerald J. Nielsen, Nielsen Law Firm, Metairie, LA, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND CAUSE OF ACTION

MATZ, District Judge.

### INTRODUCTION

As Justice Jackson once good-naturedly confessed, "[p]recedent, however, is not lacking for ways by which a judge may recede from a prior opinion that has proven untenable and perhaps misled others.... Baron Bromwell extricated himself from a somewhat similar embarrassment by saying, 'The matter does not appear to me now as it appears to have appeared to me then.'" *McGrath v. Kristensen*, 340 U.S. 162, 177–78, 71 S.Ct. 224, 233, 95 L.Ed. 173 (1950) (Jackson, J., concurring).

A little more than one year ago, in *Cohen v. State Farm Fire and Cas.*, 68 F.Supp.2d 1151 (C.D.Cal.1999), in denying a motion to dismiss brought by a private "Write Your Own" ("WYO") insurer that had issued a Standard Flood Insurance Policy ("SFIP"), this Court ruled that the insurer had not established that the National Flood Insurance Act ("NFIA"), 42 U.S.C. § 4001 *et seq.*, preempted the insured's claim for breach of the implied covenant of good faith and fair dealing.[1]

---

1. Since then, in citing *Cohen,* two District Courts have adopted its analysis and reached the same conclusion. *See Stanton v. State Farm Fire and Cas. Co., Inc.,* 78 F.Supp.2d 1029 (D.S.D.1999); *Davis v. Travelers Property and Cas. Co.,* 96 F.Supp.2d 995 (N.D.Cal.

In this case, Defendant South Carolina Insurance Company presents the same issue in its motion to dismiss plaintiff's state law-based claims.[2] Not only is the fundamental issue the same, but in both cases the plaintiff's factual assertions are similar. Are there any intervening factors that warrant a different result? The Court believes that the answer is "yes." The matter does not appear to me now as it appears to have appeared to me then.

First, here Defendant has presented a myriad of facts, arguments and supporting authorities that were not presented to the Court in the *Cohen* case. Indeed, the insurer in the *Cohen* case belatedly attempted to present some of these arguments in a motion for reconsideration, which the Court denied as "flagrantly deficient:"

> What State Farm has done in purported support of its position that the Court did not consider material facts is (1) submit a declaration that was not previously presented, (2) submit for the first time an Amicus Brief by the United States filed in a Third Circuit case, (3) cite six cases not previously cited, (4) cite three statutes not previously cited, (5) cite two regulations not previously cited, (6) cite two Congressional Reports not previously cited, and (7) cite the Appropriations Clause of the U.S. Constitution, also not previously cited.

*Cohen v. State Farm Fire and Cas.*, No. CV 99–4835, slip op. at 3 (C.D.Cal. Nov. 2, 1999). In denying the *Cohen* defendant's motion for reconsideration, the Court observed:

> United States District Courts grapple with and resolve numerous motions, many of which involve arcane and complex issues. Although it is common for

this Court and others to conduct independent research that goes beyond the authorities submitted by the parties, every court is inevitably dependent on counsel to make their arguments explicit and complete. Here, State Farm's lawyers complain that the Court erred. Perhaps it did, but not in the manner the lawyers claim. This Court will "consider" carefully what it is asked to consider. It cannot "reconsider" something that was never previously presented to it.

*Id.* at 6.

Another change is that recently the Ninth Circuit published a decision construing the legislative history of the National Flood Insurance Act. *See Flick v. Liberty Mutual Fire Ins. Co.*, 205 F.3d 386 (9th Cir.2000). There, the parties stipulated that the plaintiff's state law cause of actions for breach of contract and breach of the covenant of good faith and fair dealing were preempted, so the issue now before this Court once again was not addressed. But in holding that an insured is required to comply strictly with an SFIP, notwithstanding any differences that state law might otherwise permit, the Ninth Circuit stressed the overriding importance of uniformity in the administration of the NFIA and the key role that the Federal Emergency Management Agency ("FEMA") plays. As is set forth more fully below, the Court of Appeals' reasoning and its language militate in favor of a different conclusion on the "conflict prong" of the preemption analysis.

## FACTUAL ALLEGATIONS

Scherz holds a SFIP issued by Defendant that insures his residence in Atascadero, California.[3] First Amended Com-

---

2000). One court declined to reach that conclusion. *See Mason v. Witt,* 74 F.Supp.2d 955 (E.D.Cal.1999).

**2.** Plaintiff alleges causes of action for 1) breach of contract and 2) breach of the

implied covenant of good faith and fair dealing. Defendant's motion attacks only the second cause of action.

**3.** Defendant issued the SFIP in its capacity as a WYO insurer pursuant to the NFIA.

plaint ("FAC") ¶ 1. In February 1998, heavy rainfall flooded the crawlspace underneath plaintiff's residence. *Id.* at ¶ 2. A subsequent property inspection performed in September 1998 in connection with plaintiff's efforts to sell the property revealed that "the foundational framing had formed dry rot due to the water saturation that occurred on or around February 1998." *Id.* at ¶ 14.

Plaintiff made a claim for coverage in September 1998. *Id.* In February 1999, a representative of Defendant inspected the foundational frame of plaintiff's residence and calculated the total loss to be approximately $1,766.88. *Id.* at ¶ 15. In July 1999, a FEMA inspector performed a second inspection of the residence. *Id.* at ¶ 16. Unlike the previous inspection, the FEMA inspector did not enter the crawlspace underneath the residence, but "inserted a camera under the [residence] and took pictures of what he believed to be the damaged areas as seen through the camera." *Id.*

Also in July 1999, plaintiff received an independent bid of $50,000 to repair the residence's frame and made a demand to Defendant for an appraisal of the amount of damage. *Id* at ¶ 17. However, in August 1999, Defendant denied coverage under the SFIP on the ground that any damage to his residence was caused by "side slope runoff" rather than flooding of a creek adjacent to the residence. *Id.* at ¶ 18.

Plaintiff contends that Defendant's denial of coverage breached the SFIP. *Id.* at ¶¶ 22–23. In addition, plaintiff alleges that Defendant tortiously breached the implied covenant of good faith and fair dealing by 1) failing to inform plaintiff of his rights under the SFIP; 2) failing to act reasonably and promptly in response to plaintiff's claim for benefits; 3) failing to conduct a reasonable investigation of plaintiff's claim; 4) denying coverage without sufficient information to justify a denial; 5) denying coverage despite the fact that the SFIP covered the damage to defendant's home;

and 6) failing to attempt to reach a settlement with plaintiff. *Id.* at ¶ 26(a-g).

## LEGAL STANDARDS

On a motion to dismiss pursuant to F.R.Civ.P. 12(b)(6) for failure to state a claim, the allegations of the complaint must be accepted as true and are to be construed in the light most favorable to the nonmoving party. *Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir.1998). "[A] complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* Where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir.1996).

■ "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.... However, material which is properly submitted as part of the complaint may be considered" on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1989) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994) (*citing Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n. 3 (1st Cir.1991)).

## DISCUSSION

On this motion, understandably, the parties have dealt extensively with the Court's previous decision in *Cohen.* To illustrate why, in contrast to *Cohen,* this plaintiff's claim should be dismissed, in this Order

wherever possible the Court will "track" the analysis in *Cohen*, without repeating what is set forth in that case unless necessary for clarification.

## I. General Preemption Principles

The analysis set forth in *Cohen* is correct and need not be changed. In its most recent term, the Supreme Court issued three decisions concerning preemption, none of which change the analysis and only one of which has any possible bearing on this case. *See discussion of Geier v. American Honda Motor Co., Inc.*, 529 U.S. 1913, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000), *infra*.

## II. Application of Preemption Principles

### A. Overview of the National Flood Insurance Act[4]

The analysis in *Cohen* is correct, but the following additional features are important.

First, *Cohen* did not take into account the fact that although WYO insurers are entitled to receive processing fees and to recover their administrative costs, those payments are not what provide a meaningful economic incentive to such insurers. WYO insurers make money on SFIPs only if they actually approve a claim and authorize payment, in which case they receive a 3.3% commission on the amounts that are paid. 44 C.F.R. Pt. 62, App. A Art III(C)(1). Therefore, not only does a WYO insurer have an incentive to approve a claim, but the greater the payment, the larger the amount the insurer recovers. In assessing whether precluding state-based claims against those insurers would be consistent or inconsistent with Congress's policy objectives, this incentive may be an important consideration. (See below.)

Second, FEMA has delegated to the WYO insurers the responsibility for "adjustment, settlement, payment and defense of all claims" arising under SFIPs, 44 C.F.R. § 62.23(d), and "[p]ayment of flood insurance claims by the [WYO insurer] shall be binding on the [Federal Insurance Administration ("FIA")]." *Id.* at Pt. 62, App. A Art. II(F); § 62.23(i)(1). Moreover, WYO insurers pay SFIP claims with federal funds, initially with premiums they receive, and when those funds are exhausted, by drawing against Letters of Credit issued by FEMA. 44 C.F.R., Pt. 62, App. A Art. III(D)(1). "[R]egardless whether FEMA or a WYO company issues a flood insurance policy, the United States treasury funds pay off the insureds' claims." *Van Holt v. Liberty Mutual Fire Ins. Co.*, 163 F.3d 161, 165 (3d Cir.1998).

### B. Express Preemption

The analysis in *Cohen* is sound and need not be changed. Thus, the NFIA does not contain an express preemption provision.[5] Indeed, FEMA has recently proposed to add the following provision to all SFIPs:

IX. What Law Governs

This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law.

65 Fed.Reg. 34837. FEMA explained this proposed change as follows:

Exclusive Federal Jurisdiction and Applicable Law

Standard Flood Insurance Policies are sold by a number of private Write Your

---

4. The statutory and regulatory structure of the NFIA is complex. The Third Circuit's decision in *Van Holt v. Liberty Mutual Fire Ins. Co.*, 163 F.3d 161 (3d Cir.1998), in which the panel reversed its earlier conclusion that a district court lacked subject matter jurisdiction over an insured's state law claims, exemplifies this complexity.

5. In an amicus brief submitted to the district court in *Davis, supra,* the United States

and FEMA acknowledged that the NFIA does not contain an express preemption provision. Brief at 11.

Own (WYO) insurance companies and directly to the public by the Federal Insurance Administration. Because the National Flood Insurance Program is national in scope and accomplishes a number of programmatic missions in addition to making affordable flood insurance generally available to the public, the SFIP provides that its terms cannot be altered, varied or waived except by the written authority of the Federal Insurance Administrator. The Administrator intends that the same benefits should be available to insureds wherever the insured property is located, or whether the policy is purchased from a WYO insurance company or from the Federal Government. Thus, there is a need for uniformity in the interpretation of and standards applicable to the policies and their administration. *There-fore, we have clarified the policy language pertaining to jurisdiction, venue and applicable law to emphasize that matters pertaining to the Standard Flood Insurance Policy, including issues relating to and arising out of claims handling, must be heard in Federal court and are governed exclusively by Federal law.*

*Id.* at 34826–34827 (emphasis added).

In certain circumstances, federal agency regulations may preempt state law. *Louisiana Public Service Comm'n v. FCC*, 476 U.S. 355, 369, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986). This proposed change, if eventually adopted as an agency regulation and incorporated into future SFIPs, will expressly preempt state law claims such as Scherz's implied covenant claim, thereby effectively overruling *Cohen, Stanton* and *Davis.* However, the fact remains that currently this is only a proposed rule, and until its adoption it cannot control the outcome here.

## C. Field Preemption

Did Congress intend the Federal Government to "occupy [the field of relationships between flood insurers and their insureds] exclusively?" In *Cohen,* this Court

suggested that 42 U.S.C. § 4081(c), which provides that FEMA "may not hold harmless or indemnify an agent or broker for his or her error or omission," belies any basis for field preemption because it shows "that Congress contemplated that state tort law could apply to the conduct of insurers." This Court reasoned that § 4081(c) would make no sense unless insurers could be liable for errors or omissions, and since there is no provision in the NFIA imposing such liability, "the most logical conclusion to be drawn ... is that Congress contemplated that state tort law could apply to the conduct of insurers." *Cohen,* 68 F.Supp.2d at 1157. Defendant argues here that an insurer is different from an agent or broker and points out that the term "insurer" does not appear in subsection (c), but does appear in subsection (a), where insurance agents and brokers are also referred to. From that textual difference, Defendant argues, one must conclude that Congress intended to treat insurance companies differently than insurance agents and brokers. What this contention overlooks, however, is that elsewhere FEMA appears to place insurance companies and agents in the same status. *Cf.* 44 C.F.R. Pt. 62, App. A Art. III(D)(4). Moreover, if state tort law applies to claims against agents and brokers, then Congress did not intend that only federal law would occupy the general field of flood insurance.

What is more fundamental to Defendant's attack on *Cohen,* however, is its contention that *Cohen* failed to distinguish between "claims handling disputes," which are involved here, and disputes involving the initial issuance or procurement of the SFIP. The latter is what was involved in *Spence v. Omaha Indemnity Ins. Co.,* 996 F.2d 793 (5th Cir.1993), upon which this Court relied in *Cohen.* The plaintiffs in *Spence* asserted claims against their WYO insurer for breach of contract and fraud, alleging that they relied on representations by the insurer's sales agent and claims adjuster as to the scope of coverage

afforded by the SFIP, and that these representations later proved false when the insurer denied their claim for flood damage based on a SFIP exclusion. The Fifth Circuit held that the NFIA's one-year statute of limitations barred the plaintiffs' contract claim, but that the state law limitations period governed their fraud claim:

> While the national policies underlying the NFIP and extensive federal role therein impel our conclusion that federal common law governs claims under flood insurance policies, the same does not apply in actions for tortious misrepresentation against WYO insurers ... The more attenuated federal interests in such claims lead to our conclusion that the limitations period governing them derives from state rather than federal law.

*Id.* at 796.

Defendant argues that before *Cohen,* no court permitted an insured to assert state-based tort claims arising out of the manner in which the WYO handled his claim for payment. Defendant relies on *West v. Harris,* 573 F.2d 873 (5th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979), and other cases following *West* for the proposition that such claims are barred. It is true that *West* held that even if an insurer arbitrarily refuses to pay a claim the insured cannot recover a penalty and attorneys' fees based on a state statute. But (as noted in *Cohen),* in *West* the Court of Appeals did not expressly address whether the NFIA preempts independent state law tort claims; it only ruled on the availability of a state-based remedy for what is directly justiciable under the NFIA, *i.e.,* a breach of contract claim. *See Stanton,* 78 F.Supp.2d at 1034 (noting that *West* did not involve independent state law tort claims, but "only the types of damages available for claims under §§ 4053 and 4072 of the [NFIA]").

■ Very telling is the regulatory provision governing reimbursement of a WYO insurer's litigation costs:

Limitation on Litigation Costs.

Following receipt of notice of [a litigation claim against a WYO insurer], the Office of General Counsel (OGC), FEMA, shall review the information submitted. *If it is determined that the claim is grounded in actions by the Company that are outside the scope of this Arrangement, the National Flood Insurance Act, and 44 CFR chapter 1, subchapter B, and/or involve issues of insurer/agent negligence as discussed in Article IX of this Arrangement, the OGC shall make a recommendation to the Administrator as to whether the claim is grounded in actions by the Company that are significantly outside the scope of this Arrangement.* In the event the Administrator determines that the claim is grounded in actions by the Company that are significantly outside the scope of this Arrangement, the Company will be notified, in writing, within thirty (30) days of the Administrator's decision, if the decision is that any award or judgment for damages arising out of such actions will not be recognized under Article III of this Arrangement as a reimbursable loss cost, expense or expense reimbursement.

44 C.F.R. Pt. 62, App. A Art. III(D)(4) (emphasis added.). By its plain language ("issues of insurer/agent negligence"), this subsection contemplates negligence actions against a WYO insurer. Defendant asserts that this lawsuit alleges no negligence and that the bad faith claim does not fall "outside the scope" of the WYO insurer-FEMA arrangement. But that is not the issue. The issue is whether this provision is inconsistent with the assertion that Congress, acting through FEMA, intended to occupy the field of relationships between flood insurers and their insureds exclusively by preempting all state law tort claims against WYO insurers arising out of claims handling. The Court concludes that this "Limitation On Litigation Costs"

provision is indeed inconsistent with such an intent.[6]

For these reasons, then, this Court finds that Defendant has not established that the field preemption basis for disallowing a state-based claim applies here.

### D. Conflict Preemption

■ This is the basis for finding preemption that Defendant asserts most ardently. Conflict preemption applies where either 1) it is impossible for a private party to comply with both state and federal requirements or 2) where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. General Elec. Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990) (citation omitted). In *Cohen*, the defendant, State Farm, "argue[d] that allowing tort claims would frustrate federal interests" but it failed to establish "precisely how or to what extent those interests would be adversely affected." *Cohen*, 68 F.Supp.2d at 1156. Here, in contrast, Defendant does explain precisely how plaintiff's second cause of action conflicts with the NFIA. The Court finds that Defendant has met its burden of establishing preemption under this theory.[7]

### 1. Impossibility Of Compliance

■ "Federal law has long recognized that an insured must comply strictly with the terms and conditions of a federal insurance policy." *Flick v. Liberty Mutual Fire Ins. Co.*, 205 F.3d 386, 390 (9th Cir. 2000); *see also Gowland v. Aetna*, 143 F.3d 951, 952 (5th Cir.1998) (recognizing that "the provisions of an insurance policy issued pursuant to a federal program must be *strictly construed and enforced*") (em-

phasis added). The reason for this requirement is that the Constitution's Appropriations Clause "preclude[s] a court from granting a remedy that draws funds from the Treasury in a manner that is not authorized by Congress." *Flick*, 205 F.3d at 391. Thus, in *Flick*, the Ninth Circuit held that the rule of strict compliance applies to a SFIP's 60–day proof of loss requirement, regardless whether the SFIP is issued by FEMA or by a WYO insurer. *See also Gowland, supra* (insured's failure to timely file sworn proof of loss barred claim for benefits under a SFIP even though insureds had provided WYO insurer with a notice of loss). Indeed, a WYO insurer has no choice but to strictly enforce SFIP requirements because the insurer lacks the authority unilaterally to alter or waive any SFIP provision. *See* 44 C.F.R. § 61.13(d); Part 61, App.A(1) Art. 9(D).

■ Defendant correctly points out that when it comes to how and when an insured may assert a claim for payment, California law is not so harsh as federal law. Under California law, an insurer may not deny a claim based on a defective notice or proof of loss so long as the insured has "substantially complied with those conditions." *McCormick v. Sentinel Life Ins. Co.*, 153 Cal.App.3d 1030, 1046, 200 Cal.Rptr. 732 (1984) (insured's substantial compliance with disability policy's claims filing requirements precluded summary judgment for insurer on insured's claim for breach of the implied covenant of good faith and fair dealing based on insurer's allegedly unreasonable handling of the claim). Similarly, where an insurance policy requires the insured to give the insurer notice of a loss within a prescribed time period, the insur-

---

6. Defendant also asserts that FEMA is currently in the process of deleting this provision from its rules. Reply at 6 n. 5. That the provision may be short-lived does not allow the Court to ignore it for purposes of this motion.

7. The Court's conclusion that the NFIA preempts plaintiff's second cause of action

under a conflict preemption theory does not cast doubt on the ruling in *Stanton v. State Farm Fire and Cas. Co., Inc.*, 78 F.Supp.2d 1029 (D.S.D.1999), because the defendant in that case limited its argument to field preemption. *Id.* at 1033. The *Stanton* Court therefore had no occasion to consider a conflict preemption theory.

er may not deny a claim based on the insured's failure to comply with this requirement unless the insurer establishes "actual and substantial prejudice" resulting from such non-compliance. *Ins. Co. of Pa. v. Associated Int'l Ins. Co.*, 922 F.2d 516, 523 (9th Cir.1990) (applying California law). In contrast, a WYO insurer need *not* show prejudice to justify denial of coverage, given that the insured must strictly comply with—and the WYO insurer must strictly enforce—the SFIP's terms and conditions.[8]

Based on the foregoing, it is clear that when an insured substantially—but not completely—complies with a SFIP's proof of loss requirement, the WYO insurer cannot comply with both California and federal law.[9] The Court might find this argument dispositive if the filing of a proof of loss were an issue in this case, but Defendant does not contend that it denied coverage for Scherz on that ground. Thus, the Court turns to the second prong of the conflict preemption analysis.

### 2. Frustration Of Congress's Purposes And Objectives

■ State law is also preempted where it frustrates the accomplishment and execution of the full purposes and objectives of Congress. It is on this point that Defendant's argument is most persuasive.

An important premise upon which the Court relied in *Cohen* was that the WYO insurer—not the federal government—would ultimately be responsible for paying any judgment against the insurer for breach of the implied covenant of good faith and fair dealing. *See Cohen*, 68 F.Supp.2d at 1158 nn. 9–10. The parties in this case do not squarely address wheth-

er the federal government would in fact reimburse Defendant for any damages paid to plaintiff on his second cause of action. Nevertheless, the very possibility that insurers would not be reimbursed would place a stark obstacle in the path of Congress's goals. As noted above, WYO insurers are not compensated through premiums because they must remit those payments to the FIA, with the exception of a small amount necessary to meet current expenditures. *Van Holt*, 163 F.3d at 165. Rather, the WYO insurers receive compensation in the form of a 3.3% commission from the federal government on claims payments they actually make. 44 C.F.R., Pt. 62, App. A Art. III(C)(1). If the government is not obligated to pay judgments based on state law claims, then WYO insurers will likely err on the side of overpaying claims, in an effort to insulate themselves from potential bad faith liability. That would not only result in the federal government paying more money to claimants than required, but it would defeat the corresponding objective that insurers receive "only that profit which is properly attainable through strict enforcement of FIA regulations." Mem. at 25–26.

Moreover, to allow Scherz to assert his second cause of action would also frustrate the purposes of the NFIA by granting different rights to insureds depending on whether their SFIP was issued by FEMA or by a WYO insurer such as Defendant. The terms and conditions of all SFIPs are identical regardless whether issued by FEMA or a WYO insurer. *Flick*, 205 F.3d at 389. According to defendant, FEMA itself issues directly, *i.e.*, without using a WYO insurer, approximately 10% of SFIPs nationwide. It is undisputed that if

---

8. Defendant also asserts that California requires that an insurer comply with
the "reasonable expectations of the insured" and that this, too, is inconsistent with federal law. Mem. at 26. This argument is less persuasive. The "reasonable expectations" principle applies where an insurance contract is ambiguous. In such a situation, the ambiguity is generally resolved against the insurer so as to protect the "objectively reasonable

expectations of the insured." *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822, 274 Cal. Rptr. 820, 799 P.2d 1253 (1990). Defendant cites no contrary principle of federal common law governing interpretation of ambiguous insurance contract provisions.

9. The defendant in *Cohen* did not raise this argument.

FEMA had issued the SFIP directly to Scherz, his sole remedy for any alleged claims mishandling would be a cause of action for breach of contract. To permit Scherz to recover for tortious breach of the implied covenant of good faith and fair dealing against the WYO insurer for alleged claims mishandling would create an internal inconsistency within an otherwise balanced statutory and regulatory structure.

This conclusion finds support in the Ninth Circuit's recent decision in *Flick*. Although the primary issue in *Flick* was whether the Appropriations Clause requires WYOs to strictly construe a SFIP's proof of loss requirement, the following passage is pertinent here:

> Though our decision is premised on the Appropriations Clause, the outcome of this case is equally supported by the unique interests involved when the federal government participates extensively in a flood insurance program that is national in scope. The success of the NFIP, so far, has depended on the ability of the federal government and participating insurers to offer flood insurance at below actuarial rates. We find no reason to conclude that FEMA has structured flood insurance premiums in anticipation of the possibility that the federal government may have to pay the additional claims of policyholders who fail to comply strictly with the sworn proof of loss requirement or who fail to obtain a valid waiver from the Federal Insurance Administrator. In adhering to a rule of strict compliance, we thus avoid disturbing the delicate balance, which FEMA has sought to strike, between the need to pay claims and the need to ensure the long term sustainability of the NFIP. *We also avoid the inconsistent results that would occur were we to treat standard flood insurance policies differently depending on whether they are written by WYO insurers or FEMA.*
>
> [T]here is a compelling government interest in assuring uniformity of decision in cases involving the NFIP. *We note that the disposition suggested by the dissent would lead to the anomalous result that standard flood insurance policies written by WYO insurers would be subject to special rules, such as the rule of notice prejudice or substantial compliance, while standard flood insurance policies written by FEMA would not. Such a result would provide greater coverage at the same price to policyholders who purchase insurance through the WYO program and conflict with FEMA's goal that flood insurance policies be "standard."*

*Id.* at 396 & n. 14 (citations omitted) (emphasis added). The Ninth Circuit's concern that WYOs not be subjected to "special rules" counsels in favor of finding conflict preemption here, for to allow an insured to bring a state law tort claim for breach of the implied covenant of good faith and fair dealing against a WYO insurer but not against FEMA would amount to a special rule benefitting only some insureds.[10]

Next, the Court notes that in an amicus brief submitted to the district court in *Davis, supra,* FEMA argued that both field and conflict preemption bar state law tort claims arising out of a WYO insurer's claims handling. This view is entitled to deference. In *Geier v. American Honda Motor Co., Inc.,* 529 U.S. 1913, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000), the plaintiff asserted a claim under District of Columbia tort law, claiming that her 1987 Honda was negligently designed because it was not equipped with a driver's side airbag. The applicable motor vehicle safety standards promulgated by the Department of Transportation ("DOT") pursuant to the National Traffic and Motor Vehicle Safety

**10.** Moreover, for courts to entertain state-based causes of action involving claims handling could require application of fifty different state laws, which would also frustrate the congressional goal of creating a uniform system for flood insurance.

Act of 1966 did not require the manufacturer to equip the car with a driver's side airbag. The Supreme Court held that the Act and its implementing regulations preempted the plaintiff's claim. Significantly, the Supreme Court relied in part on the DOT's view of the issue of preemption:

> We place some weight upon DOT's interpretation of [its regulation's] objectives and its conclusion, as set forth in the Government's brief, that a tort suit such as this one would "stan[d] as an obstacle to the accomplishment and execution" of those objectives. Congress has delegated to DOT authority to implement the statute; the subject matter is technical; and the relevant history and background are complex and extensive. The agency is likely to have a thorough understanding of its own regulation and its objectives and is "uniquely qualified" to comprehend the likely impact of state requirements.

*Id.* at 1926. Here, too, the Court gives weight to FEMA's view that state law extracontractual claims relating to SFIPs "interfere with the statutory scheme and frustrate the intent of Congress ..." Brief at 16.

Finally, it is noteworthy that to dismiss the second cause of action for bad faith would not frustrate or defeat Congress's other objective that flood insurance victims be appropriately compensated. "Ordinarily, the threat of punitive damages deters insurance companies from arbitrarily denying legitimate claims in order to be unjustly enriched. In the flood insurance arena however, private insurance companies do not have a pecuniary incentive to deny a claim under a policy issued pursuant to the NFIA because all claims are paid by the federal government." *3608 Sounds Ave. Condominium Ass'n v. South Carolina Ins. Co.,* 58 F.Supp.2d 499, 502 (D.N.J.1999).

For all these reasons, the Court concludes that plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing cannot withstand scrutiny under a conflict preemption analysis. This ruling is narrow; it is limited to the cause of action asserted by plaintiff, which only challenges the manner in which Defendant handled his SFIP claim, not necessarily to other state-based claims against a WYO insurer or an agent. Given this ruling, the Court need not reach Defendant's alternate argument that the Appropriations Clause bars this cause of action.

### CONCLUSION

For the foregoing reasons, and good cause appearing therefor, the Court GRANTS Defendant's motion to dismiss plaintiff's second cause of action. The Court also dismisses plaintiff's requests for punitive damages and attorneys' fees, since neither remains a viable remedy for plaintiff's remaining cause of action for breach of contract.

IT IS SO ORDERED.

United States District Judge